Sammy SNAKE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14844.

Court of Criminal Appeals of Oklahoma.

April 9, 1969.

Joseph A. Wideman, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., David Russell, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Sammy Snake and Bruce Primeaux, hereinafter referred to as defendants, were charged by Information in the District Court of Kay County, Oklahoma, with the offense of Robbery by Force, the material part of said Information providing that Sammy Snake and Bruce Primeaux on or about February 3, 1968, did rob one Granville G. Martin, by taking certain money and personal property of value and that such robbery was accomplished by the use of such force and violence so as to overcome the resistance of Granville Martin to the unlawful taking.

This case came on for trial by jury on March 22, 1968, and on March 25, 1968, the jury returned a verdict finding the defendants guilty as charged and assessing

their punishment at imprisonment in the state penitentiary for a term of from five to ten years. Thereafter a Motion in Arrest of Judgment and Motion for New Trial were filed, the same were overruled, and this appeal was brought from that judgment and sentence. Bruce Primeaux, by and through his attorney, requested that his appeal be dismissed, and this Court sustained that request, and thereafter Sammy Snake's appeal was submitted for consideration, on the record and briefs of the respective parties.

The evidence adduced on the trial revealed that the victim of the robbery in question, Mr. Granville Martin, on the night of February 2, 1968, at about 11:00 or 11:30 p. m., was driving his automobile on a Kay County road south of Ponca City. While proceeding down the county road he was flagged down by the defendants who requested that he take them to obtain assistance as their car was apparently stuck in a ditch. The witness agreed to take them for help and the three drove to a house where one of the defendants got out of the car but apparently found no one at home. The defendants then directed this witness to proceed on down the road. As he started to comply, Bruce Primeaux reached over and turned the ignition off, took the keys and told the witness to move over, as he was going to drive. Primeaux drove the three around on the county roads until the witness' car also became stuck. The witness was then instructed to get out along with Snake and help push the car. Soon thereafter the two defendants began assaulting the witness. The witness was knocked to his knees and the defendants began kicking him with their shod feet. The victim then fell to a prone position and he believes the defendants continued kicking him. The witness testified that he was unable to defend himself in any way. After being knocked to the ground he remembers the defendants going through his pockets and their commenting that they wondered where the rest of his money was. He felt them remove his billfold from his left hind pocket. The witness testified

prior to the attack he had three dollars in the bill section of his billfold and loose change in his pockets. The witness lost consciousness and remembers awakening in the back seat of his car early Saturday morning. The victim raised himself, went to a house and was able to obtain a cab to take him home. After arriving home he was taken to the Ponca City Hospital where he remained for four days and was then taken to a hospital in Oklahoma City where he remained for ten days. The victim testified that the defendants broke his jaw, tore his ear, broke four ribs and injured his shoulder. The witness further stated that in addition to his billfold and change being missing on that Saturday morning, a pocket knife was gone and also when his car was returned to him, two blankets were missing.

The victim's wife, Mrs. Granville Martin, testified that he left home about 10:30 p. m. Friday, February 2, 1968, to go for a ride. She didn't see him again until 5:30 a. m. Saturday, February 3, 1968, when the cab driver brought him to their home. She stated when he arrived he was a mass of blood, mud, cuts and bruises.

Rena Waters testified that she was with the defendants at a bar in Ponca City on the night of February 2, 1968, but the two defendants left sometime during the evening with Tillman King in King's 1955 or 1956 Ford.

Sid Cookerly, Deputy Sheriff of Kay County, testified that he and the sheriff located the two automobiles described by the victim, one owned by Tillman King and the other by the victim. The cars were in the same location described by the victim. Both autos were stuck in mud. The Chevrolet, identified as owned by the victim, appeared to have blood on the outside and in the back seat. He also stated they found a man's billfold and a set of car keys north of the car lying in the grass. The deputy further said he found a ten dollar bill in the card section of the billfold but nothing in the bill section. They also found a dollar bill beside the

driver's seat inside the car. The deputy stated the billfold appeared to belong to Granville Martin, the victim, as it contained assorted cards with his name. On cross-examination, he stated that he did not attempt to get fingerprints off the billfold, as the texture of the leather made it difficult to lift prints. He did lift a fingerprint of Sammy Snake off the top of the victim's car.

Sheriff Norman Coffelt gave substantially the same testimony as Deputy Cookerly. Dr. Bob Gibson testified for the prosecution that he was called at about 5:30 a. m., February 3, 1968, to attend to Mr. Granville Martin at his home. When the doctor arrived he observed multiple abrasions of the victim's face, laceration of the upper lip, laceration of the forehead and he was having difficulty breathing and was in shock. The doctor testified that on examination he found his jaw was broken on both sides and he had broken ribs. The witness stated the injuries appeared to be caused by the use of a blunt object such as a foot or shoe. The doctor identified the pictures (CM 37) as accurately representing the appearance of the victim subsequent to his entry in the hospital and after being cleaned up. The witness also told of the necessary treatments which were administered to the victim.

The defense presented evidence by stipulation of one James Thompson who picked up the defendants and an Indian girl in his cab at about 5:00 a. m. February 3, 1968. He said the fare was $3.10, but the three of them just had $2.10 made up of one $1.00 bill and the remainder in change.

The defendants both testified and their testimony was substantially in agreement with the victim's, other than they denied having taken anything of value from him. They both admitted having assaulted the victim, but denied any knowledge of the blankets, the knife, or the money. One remembered taking a jacket from the rear of the car to put under the tire to try to get it unstuck. Bruce Primeaux testified he had three previous convictions for unauthorized use of a motor vehicle and a conviction for assault and battery, as well as convictions for public drunkenness. Sammy Snake, the defendant for whom this appeal is now lodged, admitted he had been convicted of second degree burglary, attempted larceny of an automobile, assault with a deadly weapon and public drunkenness.

◼︎ Defendant does not delineate his grounds for appeal, but argues in his brief that the trial court improperly allowed the State to introduce evidence concerning the extent of the victim's injuries and pictures showing those injuries. Defendant further asserts that the trial court erred in failing to sustain his motion for mistrial based on the introduction of this evidence. No authorities are cited to support defendant's contention that the court erred in admitting evidence relating to the force used against the victim and the nature and extent of the injuries testified to by the victim's physician and other witnesses, and particularly does the defendant object to the introduction of the photographs taken the next day after the assault and robbery occurred. An examination of these pictures reveal that they merely corroborate the victim's testimony as to the bruises, contusions and abrasions which resulted from the injuries inflicted upon him.

Title 21 O.S. § 792 provides:

"To constitute robbery, the force or fear must be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery.

Title 21, O.S. § 793 provides:

"When force is employed in either of the ways specified in the last section, the degree of force employed is immaterial."

The two statutes above set forth do not obviate the necessity of showing that force overcoming resistance was employed either in taking the property from the victim or retaining it; however, under the statutory provisions it is only necessary for the State to make out a prima facie case that the

force used was sufficient to overcome the resistance of the victim. It is germane to this issue to show the nature of the force used and the injury resulting from the use of this force insofar as it bears on the issue of whether the resistance of the victim was overcome and that the taking from his person was not with his consent. It is likewise germane to introduce into evidence photographs which accurately depict the bruises, contusions and abrasions suffered by the victim as a result of force employed against his person as tending to bear on this issue. The rule is well settled that

> "Photographs are admissible to illustrate or clarify some issue of the case where such photographs are shown to be faithful reproductions of whatever they purport to reproduce."

and

> "The question of the admissibility of photographs in evidence is a matter addressed to the discretion of the trial court."

See Henderson v. State, Okl.Cr., 385 P.2d 930, and cases cited therein.

It is lastly contended that the trial court erred in overruling the defendant's objection to the prosecutor's closing remarks, for they expressed a personal opinion of the prosecutor. An examination of the excerpt taken from the closing remarks of the prosecutor discloses that these remarks were not objected to on the grounds now urged on appeal, but were objected to on the grounds that they related to the amount of force employed by the defendant. The record does not disclose what preceded these remarks, nor does it disclose whether they were invited or provoked by the remarks of the defense counsel. Moreover, the record fails to disclose that any exception was taken to the ruling of the court nor does it disclose that counsel for defense moved for a mistrial or requested that the jury disregard them. We are of the opinion that this assignment is without merit, for we have repeatedly held:

> "Ordinarily error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meanings to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel."

See Buntin v. State, Okl.Cr., 403 P.2d 237, and cases cited therein.

To summarize our holding in the instant case, we are of the opinion that the evidence, although conflicting, amply supports the verdict of the jury, the court properly instructed the jury as to the law; the punishment imposed was well within the range provided by law; and the record is free of error that would justify a modification or reversal.

For all of the reasons above set forth, the judgment and sentence appealed from is affirmed.

BRETT, P. J., and NIX, J., concur.