**Dean VIERRETHER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–633.**

Court of Criminal Appeals of Oklahoma.

Aug. 21, 1978.

Rehearing Denied Sept. 14, 1978.

Paul Dean Spears, Spears, Hatch, Mickle & Wilhite, Inc., Durant, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Charles Helm, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Dean Vierrether, hereinafter referred to as the defendant, was charged by amended information for the offense of Assault and Battery With Intent to Kill, in violation of 21 O.S.1971, § 652. He was tried by a jury in the Bryan County District Court, was found guilty, and was sentenced to serve twenty (20) years in the state penitentiary. From said judgment and sentence, the defendant has perfected an appeal to this Court.

The State's evidence showed that the defendant had been hired to paint Mrs. Doris Thomas' house, and that he had commenced this work on October 2, 1974. During the early morning hours of October 3, 1974, he entered the house through a rear window, removed his boots, and went into Mrs. Thomas' bedroom. He then began to beat her about the face with the boots. Mrs. Thomas, who had taken one Valium before retiring, awoke as the blows were being administered. The assailant then demanded that Mrs. Thomas pull down the cover, which she refused to do. She then noticed that the bed was sticky with blood, and told the defendant that he could take the $3.00 in her purse, if he would leave. The defendant took the $3.00 and departed, after saying that he would kill Mrs. Thomas and anyone who tried to help her, if she tried to leave. Testimony was presented indicating that the defendant had left Mrs. Thomas' house on foot, fallen into a creek, and taken a taxi to a trailer park. He subsequently was arrested at a trailer house, where the damp boots, along with his wet shirt and pants were recovered.

After the preliminary hearing in this case, the defendant was transferred to Norman, Oklahoma, to stand trial on a forgery charge. He then escaped; and was later apprehended in New Mexico, where he is presently incarcerated. The defendant made several written demands for a speedy trial, but refused to waive extradition. In March of 1977, the District Attorney's Office succeeded in obtaining temporary custody of the defendant, and he was tried in Bryan County. At trial, a plastic surgeon testified as to the extent of Mrs. Thomas' injuries, and a series of colored slides depicting her injuries as they appeared at various times throughout her medical treatment were shown to the jury. The investigating police officer testified that the defendant had confessed at the police station, after having been interrogated several times. The State then rested.

The defense offered no evidence and rested.

The defendant's first assignment of error is that the trial court erred in overruling the defendant's motion for a speedy trial.

In the defendant's brief at pages 8 and 9 appears the following lists of events in chronological order:

"1. Information filed October 4, 1974 (O.R. –1)

2. Preliminary hearing held October 18, 1974 (O.R. –9)

3. Amended information filed October 18, 1974 (O.R. –10)

4. Formal Arraignment held November 1, 1974 (O.R. –12)

5. Defendant escaped from jail in Norman, Oklahoma (TR – 93)

6. Defendant incarcerated in New Mexico penitentiary March 22, 1975 (TR – 89)

7. Defendant wrote District Attorney advising him of his whereabouts, his serial number, and requested a speedy trial on October 21, 1975 (TR – 96, 97 and 101)

8. State announced ready for trial on September docket on September 1, 1975 (O.R. –18)

9. Motion to Dismiss filed for lack of speedy trial on September 22, 1976 (O.R. –19)

10. Pro se demand for speedy trial filed on October 6, 1976 and overruled on October 19, 1976 (O.R. –21 and O.R. –23)

11. Motion to Dismiss renewed March 9, 1977 (O.R. –27)

12. Trial held on March 9, 1977."

The defendant states that seventeen (17) months elapsed between the time the State located the defendant and the time of trial; this is true although it certainly is not an unreasonable delay under the facts of this case. Defendant relies on the Sixth Amendment to the United States Constitution, Article 2, Section 20, of the Oklahoma Constitution, and 22 O.S. 1971, § 812.

First we note there is much discussion of "terms of court" throughout the trial, and in both the defendant's and the State's briefs; in this regard we stated in *State v. Edens*, Okl.Cr., 565 P.2d 51 (1977).

". . . inasmuch as fixed jury terms have been abolished by S.B. 15, Ch. 134, § 2 of 1969 Session Laws, 32 Legislature, and since 22 O.S.1971, §§ 811 and 812 have not been repealed, we interpret these statutes to contemplate a reasonable period of delay."

Hence, the use of "terms of court" is of no consequence, but the question is was the period of delay reasonable under the circumstances of this case.

We view the delay as primarily caused by defendant's escape from custody in Norman, Oklahoma; it would truly be artificial justice to allow a defendant to escape custody; become incarcerated in the penal system of a sister state for a totally separate offense; then notify the State from which he escaped custody of his demand for a speedy trial; refuse extradition; and then when a mere seventeen months elapse between demand for a speedy trial and the trial itself, to reverse the conviction for lack of a speedy trial.

It is true that Oklahoma prosecutors have a duty to make a diligent, good faith effort to bring an accused imprisoned in another state before an Oklahoma Court to grant him a speedy trial and such effort includes extradition. See *Renton v. State*, Okl.Cr., 480 P.2d 624 (1970); however, the facts of the case before us disclose that subsequent to notice of defendant's location the prosecutor made a continuous effort to return the escaped defendant to Oklahoma which was ultimately accomplished by the use of a provision of the Criminal Extradition Act, specifically, 22 O.S.1971, § 1141.5. While it is possible that a delay of seventeen (17) months, could, under different circumstances be unreasonable, we are of the opinion that a seventeen month delay under the facts of the instant case was not unreasonable. Defendant's first assignment of error is totally without merit.

■ In his second assignment of error, the defendant contends that the presentation of color slides aroused passion and prejudice in the jury. The slides in question depicted the complaining witness' injuries. In *Oxedine v. State*, Okl.Cr., 335 P.2d 940

(1958), this Court cited *People v. Carter*, 48 Cal.2d 737, 312 P.2d 665, 673 (1957) and set forth the standard governing the admissibility of such evidence:

" 'If the principal effect of demonstrative evidence such as photographs is to arouse the passion of the jury and inflame them against the defendant because of the horror of the crime, the evidence must of course, be excluded. * * * On the other hand, if the evidence has probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissible even if it is gruesome and may incidently arouse the passions of the jury.' "

These pictures were all taken by Dr. Swamy, who later testified that they fairly and accurately represented what he saw when he took them. In *Snake v. State*, Okl.Cr., 453 P.2d 287 (1969) we stated that:

"Photographs are admissible to illustrate or clarify some issue of the case where such photographs are shown to be faithful reproductions of whatever they purport to reproduce."

The probative value of these slides is evident, in that they illustrate the extent of the injury suffered by complaining witness, and serve to corroborate her testimony and serve to illustrate the extent of the force used, which circumstantially tends to establish the intent to kill. In *Glenn v. State*, Okl.Cr., 333 P.2d 597 (1958), this Court said:

"Whether the probative value of a particular photograph outweighs its possible prejudicial effect is a question to be resolved by the trial court in the exercise of its judicial discretion. This court will only interfere when it appears that the trial court's discretion was abused."

See, *Snake v. State*, supra, and *Hill v. State*, Okl.Cr., 550 P.2d 1356 (1976).

We remain unconvinced that the trial court abused its discretion in admitting these slides. The probative value of these photographs is clearly indicated by the record before us, and the trial court acted well within the bounds of sound judicial discretion in allowing their admission. There-

fore, the defendant's second assignment of error is without merit.

■ The third assignment of error alleges that "the trial court erred in not declaring a mistrial because of the unsolicited acts and behavior of the complaining witness." According to the record, State's Exhibit No. 2, a bloodstained sheet from the complaining witness' bed, had been spread out on the courtroom floor. When Mrs. Thomas had completed her testimony, she was forced to walk across it in order to exit. While doing so, she apparently reacted with facial expressions in an audible gasping sound.

The defendant's attorney has cited no authority whatsoever in support of this assignment of error, and therefore we need not discuss it. *Sandefur v. State*, Okl.Cr., 461 P.2d 954 (1969). However, we note in passing that the Oklahoma Supreme Court has ruled on this issue. In *Boecking Construction Company v. Callen*, Okl., 321 P.2d 970 (1958), a witness became emotionally upset during the course of the trial, and the defendant contended he was prejudiced by her behavior. The court stated:

"The trial judge saw and heard what happened and is in a better position than this Court to estimate and appraise the effect of such happening. Where the trial court exercises a sound discretion in passing on a question of mistrial, its findings will not be disturbed in the absence of any evidence of abuse of this discretion."

See also, *Aderhold v. Stewart*, 172 Okl. 72, 46 P.2d 340 (1935).

■ In his fourth assignment, the defendant contends that the verdict was not supported by the evidence. The fifth assignment of error presents objections to the instruction given on assault and battery with intent to kill. We will deal with these two assignments of error in a collective manner. The defendant was convicted under 21 O.S.1971, § 652. This Section provides:

"Every person who intentionally and wrongfully shoots another with any kind of firearm, with intent to kill any person, is punishable by imprisonment in the penitentiary not exceeding life. *Any person who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death*, or and in any manner attempts to kill another, or in resisting the execution of any legal process, is punishable by imprisonment in the penitentiary not exceeding twenty (20) years." (Emphasis Added).

Defendant asserts in both the fourth and fifth assignments that ". . . there was absolutely no evidence presented, showing the object used, (boots) was used in such a manner to be deadly weapon." (Defense Brief, page 26), and therefore his motion for directed verdict should have been sustained and further the court should not have instructed the jury on assault and battery with intent to kill.

We do not agree. The evidence shows, if believed by the jury, that Mrs. Doris Thomas, age sixty-four went to bed at her usual hour, "right after the news," on October 2, 1974, (Tr. 144); that the defendant entered her house through a window (Tr. 175), went into her bedroom during the night time, and beat her ". . . on top of the head, just as hard as [he] could," [Tr. 145] with his boots [Tr. 175] and that when she awoke her bed was full of blood [Tr. 146]. Her injuries required four hours of surgery and a thirteen day hospital stay. [Tr. 58, 60].

We further note that the court in its fourth instruction to the jury instructed on the manner of use of a non per se, dangerous weapon which must be found in order to find the defendant guilty as charged.

We are of the opinion and so hold that the jury had before it sufficient facts from which to find the defendant guilty as charged beyond a reasonable doubt, if they believed those facts, which they apparently did. See *Pettigrew v. State*, Okl.Cr., 430 P.2d 808 (1967); and *Hay v. State*, Okl.Cr., 447 P.2d 447 (1968). Defendant's fourth and fifth assignments of error are without merit.

As his sixth assignment of error the defendant asserts that the sentence imposed is excessive. This Court's long standing rule with regard to modification of sentence is that we will not modify a sentence unless we can conscientiously say under all the facts and circumstances that the sentence is so excessive as to shock the conscience of the Court. See *Heritage v. State*, Okl.Cr., 503 P.2d 247 (1972).

For all the above and foregoing reasons, the judgment and sentence herein is AFFIRMED.

CORNISH and BRETT, JJ., concur.