**Donald SANKADOTA, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–78–210.**

Court of Criminal Appeals of Oklahoma.

Feb. 15, 1979.

---

S. James Foiles, Woodward, for appellant.

Larry Derryberry, Atty. Gen., Ross N. Lillard, III, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Presiding Judge:

The appellant, Donald Sankadota, was charged by information in Case No. CRF–76–50, with the offense of Assault and Battery With Intent to Kill, pursuant to 21 O.S.1971, § 652. At a jury trial in Woodward County District Court, he was found guilty of the lesser included offense of Assault and Battery With a Dangerous Weapon Without Intent to Kill, pursuant to 21 O.S.1971, § 645, and was sentenced to serve three (3) years in the State penitentiary.

As his sole assignment of error, the appellant contends that the evidence was insufficient to prove that the assault and battery was committed with a dangerous weapon, and contends, therefore, that his conviction should be modified to aggravated assault and battery, 21 O.S.1971, § 646.

Title 21 O.S.1971, § 645, under which the appellant was convicted, provides that:

> "Every person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault, battery, or assault and battery upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without the intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five (5) years, or by imprisonment in a county jail not exceeding one (1) year."

The evidence in this case reveals that on May 20, 1976, the appellant and the victim, William Crane, were camping together at Boiling Springs State Park in Woodward County, Oklahoma. When the appellant arrived at the campsite that evening, Mr. Crane was lying on the ground intoxicated, halfway between the appellant's tent and the campsite of State's witness Daniel Brown. Upon arriving at the campsite, appellant became embroiled in a fight with Brown, apparently over trouble Crane had caused in the Brown camp before passing out on the ground. Mr. Brown demanded that the appellant remove Crane to the appellant's tent, and at the conclusion of the fight with Brown, the appellant kicked the victim several times in the midsection saying, "This is all your fault." The appellant then dragged the victim to his tent. Crane was unconscious throughout the incident, and he appeared uninjured at that point. Mr. Brown then left the campsite to get the Park Ranger.

After Brown left, several other campers heard what they described as thumping or kicking noises coming from the appellant's camp, and walked over to investigate. There, they found Mr. Crane badly beaten and the appellant seated in a pickup truck. Several law enforcement officers then returned to the scene with Mr. Brown, where they observed the unconscious Crane bleeding about the head. The appellant, whose hands were covered with blood, was then arrested for intoxication.

According to the examining physician at the Woodward hospital, the unconscious victim was badly bruised and bleeding and had what looked like tread marks across his face and chest. Since the victim's injuries were of a type likely to cause death, the doctor quickly transferred Mr. Crane to an Oklahoma City hospital.

At trial, photographs of the victim and the appellant's leather work boots were introduced. The testimony was inconclusive as to whether or not the "tread marks" might have been caused by the boots, but there was human blood of an unidentified type on the soles and sides of them.

On several occasions, this Court has had to determine if shoes or boots constitute dangerous weapons within the meaning of

the statute. *Orrill v. State*, Okl.Cr., 509 P.2d 930 (1973); *Hay v. State*, Okl.Cr., 447 P.2d 447 (1968); *Pettigrew v. State*, Okl.Cr., 430 P.2d 808 (1967); *Smith v. State*, 79 Okl.Cr. 151, 152 P.2d 279 (1944). See also *Vierrether v. State*, Okl.Cr., 583 P.2d 1112 (1978). In each of these decisions, we have followed the language of *Smith v. State*, supra:

"Under the law, a pair of shoes, such as worn by the defendant, are not a dangerous weapon per se. There can be no question but that by their manner of use they might under certain circumstances become a dangerous weapon; as, for instance, where the evidence revealed that they were used to stomp one to death, or to inflict great bodily injury. The manner of their use would determine the fact as to whether or not they were a dangerous weapon. . . ." (Citations omitted) 152 P.2d at 281

The appellant neither denies that this is the rule nor does he seek its change. Rather, he contends that our holding in *Smith* mandates modification under the facts of this case. In *Smith* we ultimately found that the main injury inflicted upon the prosecuting witness was the breaking of her jaw by appellant's striking her with his fists. Insofar as there was no evidence that the use of the shoes caused the victim's injuries, we held the evidence insufficient to support the verdict and, accordingly, modified.

In *Orrill v. State*, supra, we distinguished *Smith* and affirmed the conviction of the defendant, who knocked an elderly man to the ground and then kicked him in the head, causing potentially fatal injuries. The age of the victim, the severity of the injuries and the fact that the defendant wore cowboy boots led us to conclude that whether the boots were dangerous weapons was a question of fact properly left to the jury.

The appellant here argues that this case falls closer to *Smith* than to *Orrill*. With this we cannot agree. Although circumstantial, the evidence reasonably supports the conclusion that the appellant's primary assault upon the victim was with his boots. Mr. Crane, a man in his late 50's, remained defenseless on the ground throughout the near fatal attack by the much younger appellant. We conclude, therefore, that the jury's finding is supported by competent evidence, and the judgment and sentence herein is *AFFIRMED*.

BRETT and BUSSEY, JJ., concur.