Ricky MARLOW, Appellant,

v.

The CITY OF TULSA, Appellee.

No. M–76–415.

Court of Criminal Appeals of Oklahoma.

May 9, 1977.

Jo S. Glenn, Tulsa, for appellant.

Waldo F. Bales, City Atty. by Edward J. Hicks, III, Asst. City Atty., for appellee.

## OPINION

BUSSEY, Presiding Judge.

The Appellant, Ricky Marlow, hereinafter referred to as defendant, was charged with the offense of Aggravated Assault and Battery in the City of Tulsa Criminal Court of Record, tried before a jury, found guilty, and sentenced to a term of ninety (90) days' imprisonment in the city jail and a fine of

Two Hundred Dollars ($200.00). Judgment and sentence was pronounced in accordance with the jury verdict and he appeals.

The only witness for the State was Mr. James Faught, who testified that he was the victim of the crime. He testified that he was the operator of an establishment in the City of Tulsa, Tulsa County, Oklahoma, known as Hob Nob Lounge, located at 1926 East Pine Street. He testified that on the 7th day of September, 1975, he observed an argument between two customers in his establishment at which time he asked one of them, the defendant in this case, to leave. He followed the defendant to the door in order to close the same, but was grabbed by a female whom he identified as the defendant's mother-in-law, at which time the defendant hit him several times, causing Mr. Faught to seek medical attention and requiring fourteen stitches.

Cross-examination of Mr. Faught consisted of questions concerning the exact whereabouts of the fisticuffs in relation to the building, whether or not the witness had been drinking prior to the event, and who struck the first blow.

The City then rested, after which the defendant demurred to the information, and the demurrer was overruled.

The defense then called Mary Williams who identified herself as the mother of the defendant. She stated that she was never actually inside the building; that she arrived at the parking lot in order to take her son and daughter-in-law home, when she noticed her son standing near the door of the bar "yelling" at someone inside the bar. She then noticed the City's witness, Mr. Faught, come to the door, at which time profanities were exchanged between him and the defendant and that at this time the City's witness threw the first blow. She stated that the defendant, her son, then fought back to protect himself.

On cross-examination she stated that while Mr. Faught threw the first blow, she did, in fact, see her son strike two blows which caused quite a bit of bleeding about Faught's face. She further stated that Mr. Faught returned inside the bar and emerged shortly thereafter with a wooden baseball bat, which he used to threaten the defendant.

Mrs. Marlow next testified and identified herself as the wife of the defendant. It was her testimony that while she was present in the bar that evening she did not see the altercation because the outside door to the bar was closed.

The final witness was the defendant, who testified that he became angry at another customer in the bar for "messing around with his wife." He stated he went outside to wait for his mother. Soon thereafter Mr. Faught came to the door and told him to keep quiet, at which time Faught shut the door behind him and took a swing at the defendant. The defendant related that he returned the blows.

On cross-examination, the defendant stated that he had had fights as a child, but that he had learned to control his temper. He stated that Faught was, in fact, bleeding rather badly from cuts on the face, but that the cuts may have come from Mr. Faught's hitting his head on one of the cars parked outside the bar. He further stated that he had been convicted of a crime when he was eighteen years old.

In his first assignment of error, the defendant urges that the trial court committed reversible error when it refused to grant a mistrial after the prosecuting attorney referred to the exact sentence the defendant received on a previous conviction. The record reveals that during the course of the cross-examination of the defendant, the following occurred, at page 95 of the transcript:

"Q. Were you not convicted of obtaining property by deception and fraud in the Municipal Court of the City of Tulsa—

"MR. POPE: Your Honor, I'll object to that. I think it's prejudicial; it's been asked and answered. It's prejudicial.

"BY THE COURT: Objection overruled.

"MR. POPE: I will object further that he asked him and he said, 'I'm not sure', and if he wants to repeat it ten times maybe the answer will be different, I don't know.

"BY THE COURT: Now, I'm not going to tolerate counsel arguing between each other. The witness said he didn't remember and I'm going to allow the prosecutor to refresh his memory again.

"Q. Did you not plead guilty and were you not sentenced to 30 days in the City Jail on the 29th of December, 1971, for obtaining of property by fraud and deception in the City Court?

"A. I think that's what it was."

The record reveals that counsel for defense originally objected to the question and after the court had voluntarily admonished the jury to disregard the answer as going to credibility only, the defendant did then, in fact, ask for a mistrial.

In support of his argument, counsel for defense cites the case of *Little v. State,* 79 Okl.Cr. 285, 154 P.2d 772 (1945), wherein we stated that it was improper for the prosecution to inquire into the details of a former conviction unless, of course, the details of such conviction had been brought out voluntarily by the defendant on direct examination.

In determining this issue, we cite with approval the recent case of *Jones v. State,* Okl.Cr., 554 P.2d 62 (1976), wherein we stated:

"* * *

To extinguish any misunderstanding we now hold that the prosecution's references to dates of former convictions and sentences imposed, during cross-examination, does not constitute error relative to improper inquiry into the details of those former convictions."

 While we deem it improper to go into the details of the former convictions, as stated in *Barham v. State,* Okl.Cr., 514 P.2d 417 (1973) and *Little v. State,* supra, we feel that this case falls clearly within the rule enunciated in *Jones v. State,* supra.

For his next assignment of error, the defendant urges that the trial court committed reversible error when it overruled his Motion for New Trial which was based on the finding of newly discovered evidence. On February 13, 1976, a Motion for New Trial was urged in which the defendant asserted that additional witnesses had been found whose testimony would serve to both corroborate that of the defendant and impeach that of the City's witness. Unfortunately the record in this case does not contain any affidavits or offer of proofs which would tend to clarify precisely what the newly discovered evidence was. There is, however, a record of the argument presented to the court at the hearing on the Motion for New Trial. A careful reading of this record would indicate that the defendant could produce evidence which would tend to show that the prosecuting witness had two jobs when he stated under oath that he only had one, and that the prosecuting witness had, in fact, been drinking heavily. Finally, that the defendant could produce witnesses whose testimony would raise an issue of fact of whether or not the barroom door was open or closed.

 There is nothing in this evidence which would indicate that the trial court abused its discretion in denying the Motion for New Trial. See, *Stevenson v. State,* Okl.Cr., 497 P.2d 1114 (1972). The test for whether or not a trial court abuses its discretion in granting a new trial is four-fold: 1) Is the evidence material? 2) Did the accused or his counsel exercise due diligence to discover the evidence before the trial? 3) Is it cumulative? 4) Is there a reasonable probability that if the newly discovered evidence had been introduced at the trial it would have changed the results.

 The record reveals that the newly discovered evidence would have been material to credibility only. Further, that it would have been cumulative. We have held that newly discovered evidence which goes to impeachment purposes only is not sufficient to warrant a new trial. *Kennedy v. State,* Okl.Cr., 528 P.2d 317 (1974).

Finding no error which would require reversal or justify modification, the judgment and sentence appealed from is, accordingly, *AFFIRMED.*

BLISS and BRETT, JJ., concur.