Olan Randle ROBISON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–388.

Court of Criminal Appeals of Oklahoma.

Jan. 13, 1984.

As Corrected April 2, 1984.

Hegel Branch, Jr., Duncan, for appellant.

Jan Eric Cartwright, Atty. Gen., of Okl., Susan Talbot, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Olan Randle Robison, appellant, was convicted of three counts of Murder in the First Degree in Stephens County District Court Case No. CRF–80–165. In accordance with 21 O.S.Supp.1976, § .701.11, the jury fixed punishment at death by lethal injection, in all three counts.

Appellant was convicted for the deaths of Julie Sheila Lovejoy, Averil Bourque, and Robert Leon Swinford, all of whom shared a house on the outskirts of Velma,

Oklahoma. A robbery apparently precipitated their deaths, which was evidenced by the disheveled state of their home when their bodies were discovered the morning of June 12, 1980. The victims died from wounds inflicted by a .22 caliber pistol and a .380 caliber pistol.

The state presented a number of witnesses at trial who implicated appellant and two other men, Johnny Gillum and William Starr Jordan, in the murders. One of the witnesses, Sharon Briscoe, was appellant's girlfriend and it was her apartment in Healdton, Oklahoma, where several persons, including appellant, had gathered on June 11, 1980, to discuss a future amphetamine laboratory. Throughout the day appellant consumed drugs and alcohol until he finally passed out in the early evening, but not until after he had called Johnny Gillum in Wichita Falls, Texas, requesting that Gillum come to Healdton because he was needed. When Gillum arrived and successfully awakened appellant, the two of them and William Starr Jordan took several guns from the apartment and loaded them in Sharon Briscoe's car. Appellant stated that he was going to "get some gold" or "get rich" and the three men left.

After returning sometime before 11:00 p.m. with a suitcase and an empty brown purse, appellant gave one of the women in the apartment a lady's watch, a man's watch, and a pocket knife. He then had her clean his boot, which contained a spot that looked like blood. Appellant also removed his blood-stained shirt. Upon appellant's orders, everyone packed and left that night for Wichita Falls, Texas.

Patricia Brumfield was with appellant and Johnny Gillum later that night when they travelled to Lake Arrowhead where suitcases and a gun were tossed into the water. The gun, a .380 caliber pistol was later recovered. At trial, Ms. Brumfield testified that appellant told her of shooting the people in Velma; that one of the women was naked and had a gun. He also told her that they did not find the gold they had gone after. Appellant requested that Ms. Brumfield retrieve a .22 pistol from Wil-

liam Jordan, but she discovered that Jordan had disposed of it.

Two other witnesses for the State also testified of being told by appellant that he had participated in murdering three people during a robbery.

When the crime scene was processed, jewelry was discovered in a purse beneath Averil Bourque's body on her bed. A jeweler estimated the value to be between $6,000 and $8,000. It was revealed at trial that appellant was aware that Ms. Bourque possessed valuable jewelry. Among possessions discovered missing from the house following the murders was Robert Swinford's watch, and a .22 caliber pistol.

### I.

Appellant initially contends that the trial court erred in denying his motion for change of venue. He attempted to support this contention prior to trial through the affidavits of three residents in Stephens County who verified that appellant could not receive a fair trial in that County because of the extensive pretrial news coverage of the triple slayings which prejudiced the citizens of that county against appellant and thereby rendered it impossible to empanel a jury which did not have a fixed opinion concerning his guilt.

The applicable rule to this issue is stated in *Hammons v. State*, 560 P.2d 1024 (Okl.Cr.1977), as follows:

When considering a motion for a change of venue, the presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense charged was committed. The presumption is rebutable, but the burden of persuasion is upon the defendant. *Fry v. State*, 91 Okl.Cr. 326, 218 P.2d 643 (1950). A mere showing that pretrial publicity was adverse to the defendant is not enough. *Shapard v. State*, Okl.Cr., 437 P.2d 565 (1967). The defendant must show by clear and convincing evidence that jurors were specifically exposed to the publicity and that he was thereby prejudiced. *Tomlinson v. State*, Okl.Cr.,

554 P.2d 798 (1976). The granting of a change of venue is a discretionary matter within the powers of the trial court and unless it is clear from the record that the trial court has abused its discretion, or committed error in judgment, this Court will not overrule the trial court, especially where there has been an extensive voir dire examination to determine the prejudicial effect of the pretrial publicity. *Shapard v. State*, supra.

While it is true that appellant sought to rebut the presumption in favor of his receiving a fair and impartial trial in Stephens County through the affidavits and testimony of the three affiants, we are compelled to agree with the trial judge that he did not meet success.

■ The newspaper accounts of the homicides do not appear to be adverse to appellant, although they relate the fact that he was charged with the crimes and give some background information about him. The jurors each truthfully conveyed that they had been exposed to publicity concerning the crime through the news media, but through voir dire it was established that their prior knowledge would not act to prejudice them. They each indicated they could render a fair judgment on the evidence presented in court aside from information they may have obtained outside of court. Thus, no abuse of discretion was shown by the trial court's denial of change of venue.

## II.

■ Appellant urges reversal of his conviction because of comments made by the prosecutor that amounted to comments on appellant's right to remain silent. The initial incident assigned as error occurred during voir dire when the prosecutor questioned a prospective juror concerning the consideration he would give to defendant's bias, interest, and credibility should he testify. The law in this area is that it is error for the prosecutor to comment at any stage of the jury trial upon the defendant's right to remain silent. *Hanf v. State*, 560 P.2d 207 (Okl.Cr.1977).

■ When a similar situation arose in *Stover v. State*, 617 P.2d 898 (Okl.Cr.1980), this Court reversed the conviction. The reversal was predicated on the prosecutor's comments followed by defense counsel's timely objection and motion for mistrial. Defense counsel did not object to the comments in the present case, which is mandatory for preservation of the error; thus, there is no basis for review of this alleged error other than to review it for fundamental error. Having found none, this allegation provides no grounds for reversal.

■ Appellant also complains of statements made during closing argument, which he alleges were comments on his failure to take the stand in contravention of 22 O.S.1981, § 701. We have read the closing argument and are of the opinion that the comments were no more than reasonable comments on reasonable interpretations of the evidence. See *Cobbs v. State*, 629 P.2d 368 (Okl.Cr.1981). Only when taken out of context, as appellant has done, do the remarks appear to be emphasizing appellant's failure to testify. Furthermore, no objections were entered when the remarks were made and any error which could have occurred was waived.

## III.

Appellant's third argument urges reversal because of the tainted in-court identification of appellant by Terry Henderson who had undergone hypnosis prior to identifying him. Ms. Henderson had been travelling past the murder victims' home the night of the murders when a car containing at least two occupants was backing out of the driveway. After hearing of the murders, she contacted the sheriff's office and gave a description of the car and one of the occupants.

During the investigation of the murders, Ms. Henderson underwent hypnosis. At trial appellant sought to have her testimony excluded, but was unsuccessful. When the witness testified, she positively identified appellant as the man she saw in the car.

■ This Court has not deviated from the rule pronounced in *Jones v. State*, 542 P.2d 1316 (Okl.Cr.1975), that statements made in a hypnotic state are inadmissible "when offered for establishing the truth of the statements." But the issue in the present case is not resolved by that rule. The issue at hand is whether a witness may make an in-court identification following hypnosis when no identification had been made prior to the hypnosis. We think not.

Through our research, we have discovered that the Arizona Courts share the same view on hypnosis as we have come to hold. Testimony by a witness who had been hypnotized was held inadmissible from the time of hypnosis forward in *State v. Mena*, 128 Ariz. 226, 624 P.2d 1274 (1981). The court reasoned:

> It is generally agreed that hypnosis is a state of altered consciousness and heightened suggestibility in which the subject is prone to experience distortions of reality, false memories, fantasies and confabulation (the "filling in of memory gaps with false memories or inaccurate bits of information"). In the context of pretrial interrogation under hypnosis, these distortions, delusions and confabulations are apparently aggravated by the tendency of a subject to respond in a way he believes is desirable to the hypnotist. This may happen even without any intent or awareness on the part of the hypnotist or the subject.
>
> In addition, a person may assimilate the distortions, delusions and confabulations he develops under hypnosis as part of his own memory. After the hypnotic session has ended, the subject would then perceive those hypnotically induced impressions to be reflections of his actual past observations.
>
> *    *    *    *    *    *
>
> The determination of the guilt or innocence of an accused should not depend on the unknown consequences of a procedure concededly used for the purpose of changing in some way a witness' memory. Therefore, until hypnosis gains general acceptance in the fields of medicine

and psychiatry as a method by which memories are accurately improved without undue danger of distortion, delusion or fantasy, we feel that testimony of witnesses which has been tainted by hypnosis should be excluded in criminal cases.

*    *    *    *    *    *

> We realize that it will often be difficult to determine whether proffered testimony has been produced by hypnosis or has come from the witness' own memory, unaffected by hypnotic suggestion. In order to ensure against the dangers of hypnosis, therefore, this Court will consider testimony from witnesses who have been questioned under hypnosis regarding the subject of their offered testimony to be inadmissible in criminal trials from the time of the hypnotic session forward.

■ In subsequent cases the Arizona courts have held that hypnosis does not render a witness incompetent to testify to those facts demonstrably recalled prior to hypnosis. *State ex rel. Collins v. Superior Court*, 132 Ariz. 180, 644 P.2d 1266 (1982); *State v. Young*, 135 Ariz. 437, 661 P.2d 1138 (Ariz.App.1982). We adopt that holding in the case at hand with regard to the subject matter of Ms. Henderson's posthypnotic testimony, which includes her in-court identification of appellant. The identification was inadmissible and the trial court erred in permitting it to be made. Nevertheless, this error is not grave enough to predicate reversal of the conviction. The evidence apart from Ms. Henderson's identification is far too overwhelming for us to conclude that her identification determined the verdict.

## IV.

■ Appellant argues in his Fourth assignment of error that evidence regarding appellant's character and prior offenses was improperly admitted at trial and resulted in prejudice to him. The alleged improper evidence was introduced through the testimony of Sharon Briscoe, a witness for the State, who in one instance remarked

that appellant was one of several people gathered at her apartment the day of the murders to plan the erection of an amphetamine laboratory. Although not objected to, and therefore not preserved for appellate review, we nevertheless find that the witness' explanation was relevant and therefore properly admissible. Relevant evidence is evidence that has any tendency to make more or less probable a material fact in issue. *President v. State*, 602 P.2d 222 (Okl.Cr.1979).

Testimony given at trial revealed that money was needed to set up the amphetamine laboratory, and the apparent motive behind the murders was robbery. We find that the evidence of the amphetamine laboratory was explanatory of the motive for the commission of the murders. The fact that the evidence of the lab reflected in some part on appellants character is outweighed by the probative value of disclosing the motive of robbery for committing the murders.

■■■■ In another statement Ms. Briscoe explained that she slept with appellant, and he complains that this was an improper comment on his character. It has long been the rule that the State may not attack the defendant's character unless the defendant puts his character in issue by introducing evidence of good character. *Doser v. State*, 88 Okl.Cr. 299, 203 P.2d 451 (1949). Although there are certain times where such a remark would be improper, we do not think Ms. Briscoe's comment in the context in which it was made can be construed as an attack on appellant's character.

During Ms. Briscoe's testimony, it also surfaced that appellant had a prior record, was on probation for an unspecified offense, and at the time of the murders had an upcoming court appearance. Appellant's trial counsel diligently objected to such testimony when it was offered, the objections were sustained, and the jury was admonished not to consider it.

■■■■ We note that the remarks were not elicited by the prosecutor. Moreover, even though they were improper, as they could be construed as offered to prove the character of appellant in order to show he acted in conformity therewith, we do not believe that the evidence in any way affected the verdict. In the instant case, the court's admonishment to the jury cured any error. *Kitchens v. State*, 513 P.2d 1300 (Okl.Cr. 1973).

## V.

■■■■ Appellant filed a motion for new trial based on newly discovered evidence which he claims was erroneously overruled by the trial court. Whether or not a motion for new trial based on newly discovered evidence is granted is largely within the discretion of the trial judge. *Garcia v. State*, 545 P.2d 1295 (Okl.Cr.1976). *Marlow v. City of Tulsa*, 564 P.2d 243 (Okl.Cr. 1977), enunciates the following guidelines for determining whether a trial court abused its discretion in overruling a motion for new trial: 1) Is the evidence material? 2) Did the accused or his counsel exercise due diligence to discover the evidence before the trial? 3) Is it cumulative? 4) Is there a reasonable probability that if the newly discovered evidence had been introduced at the trial it would have changed the results. *Id.* at 245.

In the present case, appellant secured an affidavit from codefendant, Johnny Gillum. Gillum stated that appellant was asleep in the backseat of Sharon Briscoe's car when the murders occurred and had no knowledge of them until the crimes had been carried out. He further stated that the man seen and identified by Terry Henderson was not appellant, but William Starr Jordan.

Gillum's trial was held several days after appellant's; he was found guilty and sentenced to life imprisonment. Appellant argues that had Gillum been called to testify in appellant's trial prior to his own, he would have refused to incriminate himself through his testimony.

■■■■ It is our opinion that the trial court did not err when it overruled the motion for new trial. The facts of this case indi-

cating appellant's guilt are so strong that there is no reasonable probability that the jury's verdict would change if the new evidence were introduced. Testimony from at least five witnesses implicated appellant in the murders through conversations they had with him or overheard, and observations they made both before and after the murders occurred. Under these circumstances we find no abuse of discretion on the part of the trial court in overruling appellant's motion for new trial.

## VI.

█ Appellant submits that the prosecutor went beyond the scope of evidence during closing arguments in both stages of the trial to arouse passions and prejudices of the jurors and also expressed his personal opinion of appellant's guilt. Our review of the closing arguments reveals that the appellant's claims are for the most part unfounded. Prosecutors are entitled to make reasonable comments on the interpretations of the evidence. See *Cobbs v. State*, 629 P.2d 368 (Okl.Cr.1981). When the prosecutor stated that he represented the victims, the one instance where we agree that the prosecutor deviated from the above-stated rule, the defense counsel failed to object. Had he objected our conclusion would be no different, however, as the comment made was improper but could not have affected the verdict. Accordingly, appellant was not denied a fair and impartial trial by the remarks of the prosecutor and reversal or modification is not justified.

## VII.

█ Five of the photographs of the victims introduced by the State at trial are claimed by appellant to be gruesome and admitted into evidence solely to arouse the passions and prejudice of the jury. The photographs depict the victims as they were found at the crime scene and the facial view of one victim at the autopsy. The general rule as to admissibility of photographs is that they are admissible when they are relevant to issues before the court and when their probative value is not out-

weighed by danger of prejudice to the accused. *Vierrether v. State*, 583 P.2d 1112 (Okl.Cr.1978).

█ The probative value of photographs of murder victims can be manifested numerous ways including showing the nature, extent, and location of wounds, *Glidewell v. State*, 626 P.2d 1351 (Okl.Cr. 1981), depicting the crime scene, *Deason v. State*, 576 P.2d 778 (Okl.Cr.1978), and corroborating the medical examiner's testimony. *Bills v. State*, 585 P.2d 1366 (Okl.Cr. 1978). The probative value of the photographs in the instant case is derived from each of the elements of the cited cases. Thus, the photographs possess probative value, which is not outweighed by prejudice to appellant.

## VIII.

One of the State's photographic exhibits depicted an O.S.B.I. agent holding a string stretched to a hole in the wall in order to illustrate the trajectory of a bullet in relation to the dead body of Averil Bourque. Appellant claims that such a posed photograph was inadmissible at trial under the rule that posed photographs showing various assumed positions intended only to illustrate a hypothetical situation are inadmissible as evidence. The rationale of the rule forbidding admission of such photographs is to guard against "stage setting" for the purpose of re-enacting the crime as the State theorizes it happened. *Roberts v. State*, 82 Okl.Cr. 75, 166 P.2d 111 (1946).

█ Although it is our opinion that the photograph should not have been admitted into evidence because its purpose was no more than to show the State's theory of what happened in Averil Bourque's bedroom the night of the murder, we do not find the photograph to be nearly as offensive as the one admitted in *Roberts*. There being no apparent prejudicial effect that could have arisen from admission of the photograph into evidence, we find no basis on which to grant relief.

## IX.

■ Title 21 O.S.1981, § 701.13(C) requires this Court to make three determinations in addition to consideration of appellant's assigned errors. The first determination is whether the death penalty was imposed under the influence of passion, prejudice, or any other arbitrary factor. We have carefully reviewed the transcript in this regard and find it devoid of prejudice or bias. And, while it is true that the victims resided in a small community where there may be strong feeling concerning a crime such as this, we are confident that the penalty imposed was not influenced by passion, prejudice, or any other arbitrary factor.

Second, a determination must be made on whether the evidence supports the jury's findings of statutory aggravating circumstances. The following aggravating circumstances were found by the jury: (1) the defendant knowingly created a great risk of death to more than one person; (2) the defendant had previously been convicted of a felony involving the use or threat of violence to the person; and (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Additionally, a fourth aggravating circumstance, the murder was heinous, atrocious, or cruel, was found to exist in the case of Averil Bourque.

■ It is apparent from the facts of the case that the three murders created a risk of death to more than one person as the three victims resided in the same house and were all present when appellant and his two codefendants arrived to rob them. The jury's finding in this regard is adequately supported.

■ During the second stage of the trial, the State admitted a certified judgment and sentence of appellant's 1973 conviction for armed robbery. This particular conviction supports the jury's finding that appellant had previously been convicted of a felony involving the use or threat of violence to the person. Furthermore, the calloused manner in which the crimes were committed supports the finding that there is a probability that appellant would commit future acts of violence which would be a continuing threat to society.

■ Averil Bourque's death was the result of multiple gunshot wounds. She was shot once in the left breast, once in the right ear, and twice between the eyes. The wounds in the ear and between the eyes were at close range as evidenced by powder burns surrounding the wounds. A death occurring at close range by two gunshots between the eyes amply supports a finding that the death occurred in a heinous, atrocious or cruel manner.

■ Finally, after considering whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, which is the third determination that this Court must make, we conclude that it is not. The death penalty was upheld in *Stafford v. State*, 669 P.2d 285 (Okl.Cr.1983), *Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983), and *Hays v. State*, 617 P.2d 223 (Okl.Cr.1980), which are all cases where the victims of robberies were shot and killed as occurred in the instant case. Furthermore, the factors which existed in the cases where this Court has either modified the death sentence to life [1] or reversed the conviction [2] are not present in the case at hand. Thus, we find that the assessed death penalty is neither excessive nor disproportionate.

For the reasons hereinstated, the judgment and sentence appealed from should be, and the same is hereby, AFFIRMED.

1. *Jones v. State*, 660 P.2d 634 (Okl.Cr.1983); *Driskell v. State*, 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983); *Munn v. State*, 658 P.2d 482 (Okl.Cr.1983); *Odum v. State*, 651 P.2d 703 (Okl.Cr.1983); *Burrows v. State*, 640 P.2d 533 (Okl.Cr.1982); *Franks v. State*, 636 P.2d 361 (Okl.Cr.1981); *Irwin v. State*, 617 P.2d 588 (Okl.Cr.1980).

2. *Coleman v. State*, 670 P.2d 596 (Okl.Cr.1983); *Hall v. State*, 650 P.2d 893 (Okl.Cr.1982); *Brewer v. State*, 650 P.2d 54 (Okl.Cr.1982); *Hager v. State*, 612 P.2d 1369 (Okl.Cr.1980).

BUSSEY, Presiding Judge, specially concurring:

I agree that the judgment and sentence should be affirmed and that the record is free from any error which would justify reversal or modification. The aggravating circumstances amply support the imposition of the death penalty. I do not, however, agree that the in-court identification of the defendant by witness Henderson was so tainted, as to render it inadmissible for I am of the opinion that the identification was based on her observations of the defendant at the crime scene. In this regard her testimony was merely cumulative of that established by other evidence.

BUSSEY, P.J., specially concurs.

CORNISH, J., concurs.