Roger Dale STAFFORD, Petitioner,

v.

The STATE of Oklahoma, Gary Maynard, Warden, State Penitentiary at McAlester, Larry Meachum, Director, Oklahoma Department of Corrections, Respondents.

No. PC–86–774.

Court of Criminal Appeals of Oklahoma.

Jan. 16, 1987.

See also, 726 P.2d 894.

## ORDER AFFIRMING DENIAL OF POST–CONVICTION RELIEF

BRETT, Presiding Judge.

On October 17, 1979, petitioner, Roger Dale Stafford, was convicted for First Degree Murder in six separate counts in Oklahoma County District Court Case No. CRF–79–926. Judgment and sentence was imposed on October 23, 1979. On June 20, 1983, this Court affirmed petitioner's convictions. *See Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983). The petition for rehearing was denied July 26, 1983. The United States Supreme Court remanded petitioner's case to this Court for reconsideration in light of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On remand to this Court, the case was reconsidered and on May 13, 1985, petitioner's claims were denied. *Stafford v. State*, 700 P.2d 223 (Okl.Cr.1985). Certiorari was denied by the United States Supreme Court on October 1, 1985. The Oklahoma County District Court denied petitioner post-conviction relief on October 2, 1986. From that denial, this appeal has been lodged. The district court order making findings of fact and conclusions of law is attached hereto as an appendix no. 1.

A petition was filed in this Court seeking to examine all of the Oklahoma State Bureau of Investigation files pertaining to petitioner's case, for the purpose of ascertaining if there exists any exculpatory evidence in them. A hearing was held in this Court at the conclusion of which the Honorable Judge Raymond Naifeh, Oklahoma County District Judge, was ordered to conduct an in camera review of all of those records to determine whether or not exculpatory evidence was contained in them. At the conclusion of that review, any exculpatory evidence was made available to petitioner, after which the evidentiary hearing on his post-conviction application was conducted. *See* appendix 2.

In the brief filed in this Court supporting his appeal, petitioner presents his assignments of error in five propositions.

In his first proposition of error, petitioner asserts that his death sentences should be overturned because he was denied exculpatory evidence by the Oklahoma County District Attorney. In particular, petitioner refers to the statement of Verna Stafford made on March 8, 1979. This issue was determined by this Court when petitioner's regular appeal was considered. This Court stated: "[E]ven if the prosecution did fail to provide the defense with the March 8th statement, it did not affect the outcome of the trial since the prosecution presented this evidence to the jury for their consideration." 665 P.2d at 1215–16. The testimony at the evidentiary hearing revealed that all of the evidence pertaining to this case was retained in one room of the district attorney's offices and that both defense counsels, and the legal intern assisting them had complete access to those files. Consequently, it was made clear that all the materials, whether exculpatory or not, were made available to petitioner and his attorneys.

■ Unless the alleged omission deprived petitioner of a fair trial, there is no constitutional obligation requiring the verdict to be set aside and absent some constitutional violation there was no breach of the prosecutor's constitutional duty to disclose. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *Bagley* held that there has to be a showing that

there is a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different. This Court has already held that such reasonable probability does not exist. *Stafford v. State,* 665 P.2d at 1215–16.

Petitioner's second proposition asserts the claim of ineffective counsel. This contention was considered by this Court and determined in *Stafford v. State,* 700 P.2d 223 (Okl.Cr.1985), when this precise question was remanded to this Court by the United States Supreme Court. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, was the gauge against which counsel's performance was compared. Petitioner's new assertion is insufficient to sustain his contentions.

In his third proposition, petitioner asserts that it was error to have admitted the testimony of Pam Lynch and Verna Stafford because it was tainted by hypnotic enhancement. Prior to the attempt to hypnotize her, Verna Stafford had already informed the police of her husband's involvement in the murders. This Court held in *Johnson v. State,* 665 P.2d 815, 820 (Okl. Cr.1982), that when hypnotic testing does not in any manner affect the testimony of a witness, which is already on record, the testimony may not be tainted. Also, there was little question concerning the ability of Verna Stafford to identify her husband, whether or not she was hypnotized. We fail to see how petitioner was prejudiced by admission of her testimony in this case.

The testimony of Pam Lynch has previously been upheld in *Stafford v. State,* 669 P.2d 285, 294 (Okl.Cr.1983), in his trial and conviction for three murders in McClain County District Court. Likewise, this holding is consistent with this Court's holdings in *Robison v. State,* 677 P.2d 1080 (Okl.Cr. 1984). We therefore deny this assignment of error.

In his fourth proposition, petitioner asserts that his Constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated by the trial court's instructions in the second stage of his trial.

A. He first asserts that the court's refusal to consider sympathy is a constitutional error. His assertion that the trial court's instruction twelve is erroneous is without merit. This contention was not raised on petitioner's direct appeal from his conviction and is not entitled to be raised on post-conviction appeal. *Cartwright v. State,* 708 P.2d 592, 594–95 (Okl. Cr.1985), *sub. nom Cartwright v. Maynard,* 802 F.2d 1203 (10th Cir.1986); *Jones v. State,* 704 P.2d 1138, 1140 (Okl.Cr.1985). *See also Pierre v. Shulsen,* 802 F.2d 1282, 1283, (10th Cir.1986), where the U.S. Tenth Circuit Court held petitioner in a death penalty case was barred from raising certain issues regarding the second stage of his trial since he failed to present this issue on direct appeal, as required by Utah law. In addition, in this case no objection was made at trial to this instruction. By statute in Oklahoma, petitioner is entitled to offer any mitigating evidence to the jury, but sympathy is not acceptable.

B. Next petitioner asserts that the court's instructions did not give the jury sufficient discretion to return a verdict for life imprisonment. Again, this contention was not raised on petitioner's direct appeal and is, therefore, not entitled to be raised on post-conviction appeal. Likewise, the court's instructions were not objected to at trial and any objection is now waived. *Green v. State,* 713 P.2d 1032 (Okl.Cr. 1985). Also, the court's instructions comply with the Oklahoma Statutes. This contention is denied.

C. Petitioner asserts that the court's instructions shifted the burden of proof to him to prove that the death penalty should not be assessed. Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Petitioner failed to offer any objections to the court's instructions at the time of trial. He, therefore, has waived any complaint on post-conviction.

■ D. Petitioner's last contention under this assignment asserts that the nature and function of the mitigating circumstances were not adequately defined. In the present case, the trial court instructed the jury on the mitigating circumstances in accordance with Oklahoma law. The jury was also instructed to consider all of the evidence received by them in open court, as well as all of the evidence offered by petitioner to mitigate or lessen his culpability. In his brief, petitioner states, "The jurors were never told in substance that the law recognizes the existence of circumstances which do not justify or excuse the offense but which may in fairness or mercy be considered as extenuating or reducing the degree of moral culpability or punishment." Citing *Spivey v. Zant,* 661 F.2d 464, 471 (5th Cir. Unit B.), cert. denied 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). However, a review of *Zant,* reveals that the Georgia Trial Court did not instruct on any mitigating circumstances. Whereas, the Oklahoma Statutes provide in 21 O.S. 1981, 701.10, in part, that a defendant may introduce evidence as to any mitigating circumstances. Once those mitigating circumstances are entered, the trial court must instruct the jury that they may consider any of the mitigating evidence as extenuating or as reducing the degree of moral culpability or blame. We, therefore, find the statute is in compliance with constitutional requirements. *Cf. Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1; *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

In the instant case, the trial court's instruction number eight, given at the second stage of trial recites the following:

You are instructed that mitigating circumstances are not specifically enumerated in the statutes of this State but the law of this State sets up certain minimum mitigating circumstances you shall follow as guidelines in determining which sentence you impose in this case. You shall consider any or all of these minimum mitigating circumstances. You may consider any additional mitigating circumstance, if any, you find from the evidence in this case. What are and what are not additional mitigating circumstances is for you the jury to determine.

The following are the minimum mitigating circumstances as provided by law:
1. The defendant has no significant history of prior criminal activity;
2. The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;
3. The victim was a participant in the defendant's homicidal conduct or consented to the homicidal act;
4. The murder was committed under circumstances which the defendant believed to provide a moral justification or extenuation for his conduct;
5. The defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor;
6. The defendant acted under duress or under the domination of another person;
7. At the time of the murder, the capacity of the defendant to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or intoxication;
8. The age of the defendant at the time of the crime.

This Court found in *Stafford v. State,* "[B]oth the State and the defense opted to rely on the evidence submitted in the first stage guilt proceedings, neither side offering additional evidence in the second stage." 665 P.2d at 1212. The trial court's instruction number eight reflects that the trial judge did not want the jury to consider the punishment requirement without some guidance as to what mitigating circumstances might be available to them. Therefore, this contention is without merit.

In his last assignment of error, as proposition five, petitioner asserts that because of pretrial publicity a change of venue should have been granted. This Court directly addressed both the venue and *Witherspoon* issues in petitioner's direct appeal. 665 P.2d at 1215 and 1213.

The record before this Court is sufficient to determine that the exhaustive nature of voir dire protected petitioner from the possibility of any community prejudice. Each of the jurors stated in open court that they could decide the case from the evidence and not from stories in the news. As this Court stated in *Moore v. State*, 672 P.2d 1175 (Okl.Cr.1983):

[T]he trial judge scrupulously excused those potential jurors who indicated they might not be able to set aside their knowledge or opinions of the crimes and impartially and fairly judge the appellant on the evidence presented at the trial. This is all that can be asked of jurors. 22 O.S. 1981, § 662; *Frye v. State*, 606 P.2d 599, (Okl.Cr.1980).

*Id.* at 1177.

In the instant case, the same discretion was applied in order that petitioner would receive a fair trial. Petitioner has failed to show prejudice that would justify the recalling all of the prospective jurors or whoever might be necessary to prove such a vague claim as petitioner alleges.

This Court finds that the trial court was correct in denying petitioner's Application for Post-Conviction Relief and we hereby affirm the trial court's denial of that application.

IT IS THEREFORE THE ORDER OF THIS COURT, that the denial of petitioner's Post-Conviction Application by the Oklahoma County District Court in CRF–79–926, shall be AFFIRMED.

BUSSEY, J., concur.

APPENDIX NO. 1

CRF–79–926

IN THE DISTRICT COURT OF OKLAHOMA COUNTY

STATE OF OKLAHOMA

FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. PETITIONER'S CONTENTIONS

1. Petitioner filed an application for post conviction relief in the District Court of Oklahoma County on December 18, 1985. Petitioner asked the court to discharge him, grant a new trial or modify the judgment and sentence in the above styled and numbered cause for the following reasons:

(a) That he was denied effective assistance of counsel at both the first and second stages of trial;

(b) that he was denied by the prosecution disclosure of exculpatory evidence pertaining to guilt and punishment;

(c) that petitioner was denied his right to counsel when the State used evidence of inculpatory statements allegedly made by petitioner to Ronald Watkins;

(d) that he was denied his right to counsel when his attorney was denied access to him by OCPD after charges were filed;

(e) that he was denied due process of law because jury voir dire was not transcribed;

(f) that petitioner was denied fair cross-section of the community by exclusion of those jurors opposed to the death penalty;

(g) that he was denied his right to a fair and impartial jury when his motion for change of venue was overruled by the trial court;

(h) that he was denied his right to confront the witnesses against him when the State used hypnotically enhanced testimony of Carlos Joy, Pamela Lynch, Verna Rae Stafford, Linda McFarland Lewis, Terecia Darlene Bennett and Rose Ann Marie Collins;

(i) that the Court of Criminal Appeals erred when it incorrectly framed the issue involving admission of the death scene photographs;

(j) that the Court of Criminal Appeals denied petitioner his right to due process of law by failing to suppress petitioner's statements;

(k) that the Court of Criminal Appeals erred by failing to sustain testimony

regarding statements of Harold Stafford;

(*l*) that petitioner is subjected to cruel and unusual punishment; and

2. At a hearing on April 2, 1986, First Assistant Public Defender Robert A Ravitz, petitioner's present counsel, conceded the only remaining issues that have not heretofore been decided and to be presented to this Court on behalf of petitioner for purposes of post conviction relief are:

a. Petitioner was denied his right to confront witnesses against him when the State used hypnotically enhanced testimony at trial,

b. Petitioner was denied disclosure of exculpatory evidence in possession of the District Attorney pertaining to guilt and punishment, and

c. Petitioner was denied effective assistant of counsel at trial in both the 1st and 2nd stages.

## II. FINDINGS OF FACT

A. FINDINGS OF FACT CONCERNING ALLEGED HYPNOTICALLY ENHANCED TESTIMONY: At the evidentiary hearings held in April, 1986, Petitioner called witnesses, Verna Rae Stafford, Terecia Bennett Rose Ann Marie Collins, Dr. Hoyt Morris, Det. Bill Harrison, Det. Bill Cook, Greg Shields, and Arthur Linville in support of his contention that the State used hypnotically enhanced testimony at trial.

1. Rose Ann Marie Collins testified she had never been placed under hypnosis nor was any attempt to hypnotize her ever made.

2. Terecia Bennett testified she had never been placed under hypnosis nor was any attempt to hypnotize her ever made.

3. Verna Rae Stafford testified she was never placed under hypnosis. She testified Dr. Hoyt Morris attempted to hypnotize her one time. She testified she had already given police detailed accounts of the Sirloin Stockade mur-

ders as well as written sworn statements prior to the hypnosis session. She testified no one asked her any questions during the hypnosis session concerning the murders at the Sirloin Stockade and no one made any suggestions to her about the Sirloin Stockade murders for which petitioner was tried and convicted.

4. The initial question asked Verna Stafford was "Could she recall in as much detail as she could the events of a certain date regarding the killings on the highway by Purcell?"

5. Dr. Hoyt Morris, P.h.D., testified he hypnotized Verna Stafford sometime in the Spring of 1979. He testified she was never asked any questions or given any suggestions relating to the Sirloin Stockade murders. The extent of her hypnosis was less than five minutes. He testified her memory was not enhanced in any way and there were no post hypnotic suggestions made nor were any possible.

6. That shortly after the hypnotic session began a detective told Dr. Morris that they should end the session because Verna Stafford was fabricating information. The hypnotic session involving Dr. Morris was held in the Police Training Center. During the hypnotic session the doctor was unable to determine what was factual recall and what was fabricated.

7. Detectives Cook and Harrison, of the Oklahoma City Police Department and Oklahoma State Bureau of Investigation Agent Arthur Linville testified they were present when Verna Stafford was attempted to be hypnotized and all were consistent that no questions were asked nor suggestions given concerning the murders at the Sirloin Stockade. None of the detectives ever believed Verna Stafford was under hypnosis. Prior to the hypnotic session Verna Stafford had drawn a diagram of the Sirloin Stockade and told the police that Roger Stafford

was involved and had gone over the types of guns used in the homicides.

8. The deposition of Les McCaleb, Oklahoma City Police Department detective was admitted into evidence at the evidentiary hearing. His testimony by deposition was consistent with that of Verna Rae Stafford, Dr. Hoyt Morris, Detectives Harrison and Cook and O.S.B.I. Agent Arthur Linville in that the testimony of Verna Stafford was not enhanced by hypnosis. Detective McCaleb is now deceased.

9. The exact date of the hypnosis session conducted by Dr. Hoyt Morris was not established. Dr. Hoyt Morris and Arthur Linville agreed it was sometime in late Spring of 1979.

10. Verna Stafford had already given police detailed accounts of petitioner's involvement in the Sirloin Stockade murders prior to the hypnosis session. Prior to the hypnotic session Verna Stafford had drawn a diagram of the Sirloin Stockade and told the police that Roger Stafford was involved and had gone over the types of guns used in the homicides.

11. Verna Stafford's statements to police concerning petitioner's involvement in the Sirloin Stockade murders before the hypnosis session were consistent with her testimony at trial.

12. Petitioner's attorney, John T. Hall, cross-examined Arthur Linville at the trial concerning the attempted hypnosis session with Verna Stafford T. 395

13. Verna Stafford's testimony was not enhanced by hypnosis.

14. The maids Linda McFarland Lewis, Rose Anna Collins and Terecia Bennett, were first located by the police on May 24, 1979.

15. Witnesses Rose Ann Marie Collins and Terecia Bennett were never hypnotized and there is no evidence that witness Linda McFarland Lewis was ever hypnotized.

16. Petitioner presented no testimony concerning memory enhancement of Pam Lynch, Carlos Joy or Linda McFarland Lewis.

17. Petitioner admitted into evidence reports indicating Carlos Joy had been hypnotized. Carlos Joy was interviewed at the scene of the crime on July 16, 1978, shortly after the murders were committed. The testimony he gave at the trial of the case was consistent with that given to police before hypnosis.

18. Petitioner's attorney, John T. Hall, testified at the evidentiary hearing that he knew Carlos Joy, prior to trial, had been hypnotized.

19. Carlos Joy's testimony was not enhanced by hypnosis.

20. On July 23, 1978, seven days after the crime was committed, Pam Lynch related to Detective Shahan of the Oklahoma City Police Department the description of a station wagon and driver she saw leaving the Sirloin Stockade on July 16, 1978, the day the murders took place.

21. Police reports admitted into evidence indicate Pam Lynch was hypnotized on July 30, 1978, approximately 14 days after the murders. The description of the station wagon she almost collided with shortly after the murders were committed was consistent before and after hypnosis. Her description was consistent at trial.

22. Pam Lynch's testimony concerning the description of the station wagon petitioner was driving was not enhanced by hypnosis.

23. The description Pam Lynch gave of the driver of the station wagon was the same before hypnosis as after hypnosis.

24. The description of the driver Pam Lynch gave to Detective Shahan was not enhanced by hypnosis.

25. Although Detective Shahan had not previously shown Pam Lynch any

photographs of petitioner and Pam Lynch had not seen composite drawings made of petitioner, she recognized petitioner and chose him from a photo line-up on March 11, 1979, as being the driver of the station wagon she saw leaving the vicinity of Sirloin Stockade on the night of the murders.

26. Pam Lynch's identification of petitioner was not enhanced by hypnosis.

27. Ray Tackett gave composite drawings and descriptions to police prior to any hypnosis. He did not testify at trial nor at the evidentiary hearing for post conviction relief.

28. Hypnosis did not contribute to the identification of petitioner by Ray Tackett.

29. Detectives Harrison, O.C.P.D. and Greg Shields of the O.S.B.I. conducted an interview with Verna Stafford on March 8, 1979. Both testified at the evidentiary hearing on post conviction relief that they did not know how to induce hypnosis and that Verna Stafford was not under hypnosis when that interview was conducted. Verna Stafford testified she was not under hypnosis when the March 8, 1979 interview was conducted.

30. Verna Stafford was not under hypnosis on March 8, 1979 when Detectives Harrison and Shields interviewed her.

B. FINDINGS OF FACT CONCERNING ALLEGED WITHHELD EXCULPATORY EVIDENCE: Petitioner called J. Malone Brewer, John T. Hall and Rik Brewer as witnesses in support of his contention that exculpatory evidence material to petitioner's guilt or punishment was withheld from petitioner prior to trial.

1. That prior to coming to Oklahoma City from Illinois Verna Stafford had given no exculpatory statement.

2. J. Malone Brewer, petitioner's trial counsel, testified at the evidentiary hearing on post conviction relief that a 166 page taped interview of Verna Stafford taken by Detective Harrison and Greg Shields on March 8, 1979 was withheld by the prosecutor prior to trial.

3. A Motion for Discovery was filed by defendant's counsel as was a Motion To Inspect The Prosecutor's File.

4. That interview taken by Detective Harrison and Greg Shields on March 8, 1979 was not a sworn statement.

5. References concerning that March 8, 1979 interview appear throughout the preliminary hearing transcript as well as the original trial transcript.

6. State's Exhibits 1 and 2 were sworn statements of Verna Stafford turned over the by the State to defense counsel prior to trial.

7. The 166 page interview of Verna Stafford on March 8, 1979 was attached to petitioner's original appellate brief to the Oklahoma Court of Criminal Appeals as exhibit "A".

8. The Court of Criminal Appeals has previously ruled that even if the prosecutor did withhold the March 8th statement itself, it did not effect the outcome of the trial since the prosecution presented this evidence to the jury for their consideration.

9. Petitioner entered into a stipulation that evidence, records and files not admitted into evidence at trial were placed in the District Attorney's property room in October, 1979 and have remained there since that time.

10. A transcribed copy of that 166 page taped interview of March 8, 1979 was located in those files when they were brought out for examination by petitioner's attorney in March, 1986.

11. In April, 1986, petitioner's attorney Robert A. Ravitz and Assistant District Attorney, Fern L. Smith, located a brown envelope while search-

ing the Oklahoma City Police Department files. The original tape recordings of Verna Stafford's March 8, 1979 interview conducted by Detective Harrison and Greg Shields were contained inside that envelope.

12. Inside the brown envelope containing the March 8, 1979 taped interview of Verna Stafford was also a hand written note which reads: "Tape of Verna—Given to Brewer 9-27-79".

13. On the outside of the brown envelope containing the March 8, 1979 taped interview of Verna Stafford was a similar notice.

14. Those handwritten notes contained inside the envelope and on the envelope itself are the handwriting of James McKinney, Assistant District Attorney who prosecuted petitioner at trial.

15. James McKinney has been deceased since early 1980.

16. A notice filed with the Court on October 17, 1979 and delivered to petitioner's attorney on October 4, 1979 by James McKinney indicate petitioner was given all requested reports. That notice is admitted into evidence as State's Exhibit # 3.

17. Petitioner's attorney, John T. Hall testified he recognized the notice as one James McKinney filed in October, 1979.

18. Petitioner's attorneys have never questioned the notice.

19. Andrew Coats, District Attorney who tried petitioner's original case in 1979 testified petitioner's attorney was given open file discovery prior to trial.

20. Andrew Coats, District Attorney of Oklahoma County, told assistants assigned to the case to turn over all exculpatory evidence and to open their file. Mr. Brewer was adequately assisted in preparing this case by John Hall and Legal Intern Rick Brewer who spent hours sift-

ing through this case in preparation for trial in the matter.

21. Coats testified he had personally observed J. Malone Brewer, petitioner's trial attorney, reviewing the prosecutor's files on several occassions prior to trial.

22. The 166 page March 8, 1979 interview of Verna Stafford was not withheld from the petitioner prior to trial.

23. The contents of the March 8, 1979 interview of Verna Stafford were presented to the jury for their consideration.

24. The Court of Criminal Appeals has previously ruled concerning the March 8, 1979 interview with Verna Stafford.

25. The allegation concerning the withholding of the March 8, 1979 interview is res judicata.

26. Petitioner's present attorney, Robert A. Ravitz has reviewed the prosecutor's files approximately thirty hours during the months of March and April, 1986.

27. Petitioner has admitted into evidence at the evidentiary hearing numerous police reports, notes and records taken from the files of the District Attorney previously locked in the property room since the trial in October, 1979. Petitioner claims these reports are exculpatory and were withheld from petitioner by the prosecutor.

28. J. Malone Brewer, petitioner's trial attorney, testified at the evidentiary hearing, he had not seen many of the reports admitted into evidence by petitioner's present attorney.

29. J. Malone Brewer never made any positive statement to the court that the records files and reports admitted at the evidentiary hearing on Post Conviction Relief were in fact exculpatory.

30. Petitioner's attorney, John T. Hall testified he had not seen any of the reports prior to trial. On cross exam

he admitted he may have seen some of them.

31. In view of the voluminous number of files, records and reports held in the District Attorney's property room and delivered to the Court by the prosecution for the Court's inspection, it is unlikely that petitioner's trial attorney could have remembered the contents of each of the reports he examined prior to October 10, 1979, approximately 7½ years ago.

32. Petitioner has failed to show any of the reports were exculpatory.

33. Oklahoma State Bureau of Investigation files delivered to the Honorable Raymond Naifeh by the OSBI on May 19, 1986, have been reviewed many hours in detail.

34. An examination of the files maintained at the Oklahoma State Bureau of Investigation headquarters concerning this case failed to reveal any evidence which was material to the guilt or punishment of petitioner.

35. Petitioner's trial attorney was given full and complete discovery prior to trial as evidenced by testimony of Andy Coats, District Attorney who prosecuted the case, testimony at the preliminary hearing and trial and notices filed with the Court Clerk at or near time of trial as well as notices left by James McKinney, Assistant District Attorney who assisted in prosecuting petitioner at trial.

36. The State did not withhold exculpatory evidence prior to trial which was material to the guilt or punishment of petitioner.

37. The evidence against petitioner at trial was overwhelming.

### C. FINDINGS OF FACT CONCERNING INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner presented no evidence to the court to support his contention that this trial counsel was ineffective.

1. Petitioner concedes in his application for post conviction relief that petitioner's claim has been raised and decided twice previously by the Oklahoma Court of Criminal Appeals using both the "reasonably competent assistance of counsel test", See *Johnson v. State,* 620 P.2d 1311 (Okl.Cr.1980) and *Phillips v. State,* 650 P.2d 876 (Okl.Cr. 1982) and the Strickland standard.

2. Petitioner has presented this court with no new evidence in support of his claim that trial counsel was ineffective.

3. The issue of petitioner's claim that trial counsel was ineffective is res judicata.

### III. CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court makes the following conclusions of law:

1. The evidence presented by petitioner during the evidentiary hearing on post conviction relief is not material to guilt, innocence or punishment of petitioner;

2. There is no reasonable probability that the results of the jury trial would have changed if petitioner's claims were true;

3. Because, prior to trial and during the course of the trial, the State did not withhold any exculpatory evidence which was material to guilt, innocence, or punishment of petitioner, there was no issue as to whether the State violated the petitioner's rights guaranteed to him by the Constitution of the State of Oklahoma or the U.S. Constitution as mandated the case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963);

4. Assuming that the State prior to trial or during the course of the trial, had withheld evidence of which the petitioner complains was not disclosed to him, that evidence when evaluated within the context of the entire record

of petitioner's case does not create a reasonable doubt as to the guilt of petitioner;

The U.S. Supreme Court held in *U.S. v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.2d. 342 (1976):

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence created a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."

5. Hypnosis does not render a witness incompetent to testify, the witness' testimony is limited to those facts which can demonstrably be shown to have been recalled prior to hypnosis. *Robison v. State*, 677 P.2d, 1080 (Okl.Cr. 1984); *Harmon v. State*, 700 P.2d 212 (Okl.Cr.1985). It is apparent from the testimony presented by petitioner's witnesses at the evidentiary hearing that hypnosis did not contribute to the facts related to police by Verna Stafford, Carlos Joy and Pam Lynch prior to any hypnosis session.

6. In *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984) the court held:

".... a witness may not make an in-court identification following hypnosis when no identification has been made prior to hypnosis."

The police reports admitted into evidence by petitioner without objection from the state relate that Pam Lynch's in-court identification of petitioner was post-hypnotic. Pam Lynch's descrip-

tion of the driver did not change after hypnosis. She was never shown any photographs or composites of petitioner. At the time she was hypnotized, petitioner was not a suspect and no post hypnotic suggestions were possible. Ms. Lynch chose petitioner from the photo line-up on March 11, 1979. Petitioner was not arrested in Chicago until March 13, 1979, 2 days later. However, if the identification of petitioner at trial was error, this error is not grave enough to say that petitioner should be granted relief. The evidence against petitioner is far too overwhelming to conclude that Pam Lynch's identification of petitioner determined the verdict or created a reasonable doubt as to defendant's guilt. Other facts related to police by Pam Lynch concerning the description of petitioner's station wagon were consistent before hypnosis and after hypnosis. They were corroborated by other witnesses and were properly admitted.

7. Petitioner's claim that trial counsel was ineffective was previously addressed by the Court of Criminal Appeals in their published opinion on June 20, 1983. That opinion was affirmed by the Court of Criminal Appeals again on May 13, 1985 applying the test set forth in *Strickland v. Wasington* [466] U.S. [668] 104 S.Ct. 2052 [80 L.Ed.2d 674] to petitioner's case. In *Coleman v. State*, 693 P.2d 4 (Okl. Cr.1984) the Court of Criminal Appeals stated:

"The doctrine of res judicata bars consideration in post conviction proceedings of issues which have been or which could have been raised on direct appeal." See also *Harrell v. State*, 493 P.2d 461 (Okl.Cr.1972). res judicata applies.

8. No new evidence has been presented which would change this court's opinion in light of the Strickland standard.

9. All other issues raised by petitioner in his application for post conviction relief have previously been raised and

decided by the Court of Criminal Appeals. Petitioner has presented no new evidence in support of his contentions. The doctrine of res judicata applies.

10. Petitioner has failed to demonstrate that there is a reasonable probability that, absent the alleged errors of which he now complains, the verdict of the jury would have been altered or his punishment would have been lessened.

WHEREFORE, it is the decision of this Court that the petitioner's application for post conviction relief is hereby denied, and that the petitioner Roger Dale Stafford, should be put to death according to the mandates previously entered therein.

BY: /s/ Raymond Naifeh
RAYMOND NAIFEH
Judge of the
District Court

## APPENDIX NO. 2

THE STATE OF OKLAHOMA, ex rel., TED A. LIMKE, Director of the Oklahoma State Bureau of Investigation, Petitioner,

v.

THE HONORABLE RAYMOND NAIFEH, Judge of the District Court Within and for Oklahoma County STATE OF OKLAHOMA, Respondents.

No. P–86–231

## ORDER GRANTING WRIT OF PROHIBITION IN PART

On April 14, 1986, the Attorney General filed on behalf of Mr. Ted A. Limke, Director of the Oklahoma State Bureau of Investigation, an application for this Court to assume original jurisdiction and to issue the writ of prohibition against the Honorable Respondent, Raymond Naifeh, Judge of the Oklahoma County District Court. This Court assumes original jurisdiction.

Roger Dale Stafford presently has in the process of consideration his Post-Conviction Application in Oklahoma County District Court Case No. CRF–79–926. In that case, Stafford was sentenced to be executed for First Degree Murder. In that post-conviction proceeding the Public Defender has obtained from the District Court an order requiring the production to the District Court of all Oklahoma State Bureau of Investigation (O.S.B.I.) reports that contain any exculpatory evidence pertaining to Roger Dale Stafford in what is known as the "Lorenz and Sirloin Stockade Homicides."

On or about April 14, 1986, the Honorable Respondent entered an order in the District Court which recited in part:

This Court ... determines that it is necessary for the fair and complete administration of justice to require the production of the Oklahoma State Bureau of Investigation report to the Court. This to include all information regarding ROGER DALE STAFFORD, Verna Stafford or any information regarding the Lorenz or Sirloin Stockade homicides currently in the possession of the Oklahoma State Bureau of Investigation.

It is the further order of this Court that such records be furnished and brought to this Court's chambers at 10:00 a.m. Tuesday, April 15, 1986, whereby these records are to be accorded access to the Public Defender, Robert A. Ravitz, in the presence of any representative of the District Attorney's Office, the Attorney General's Office or the Oklahoma State Bureau of Investigation, who desires to be present while counsel looks at these files. It is further the order of this Court that Ted Limpke, [sic] Director of Oklahoma State Bureau of Investigation, shall be personally responsible to see to it that all records are brought to this Court.

This Court stayed further proceedings pending a determination of this matter.

Thereafter, this Court ordered a response to be filed by the Public Defender, on behalf of Respondent; and this Court set the matter down for oral argument to be had at 10:00 a.m. Thursday, April 24, 1986. At that hearing the petitioner was represented by Mr. David Lee and Ms. Susan Dickerson, of the Attorney General's

Office. The Respondent was represented by Mr. Robert Ravitz and Mr. Tim Wilson of the Oklahoma County Public Defender's Office. Briefs were submitted by both sides.

NOW THEREFORE, after considering the pleadings filed herein and after hearing oral argument this Court finds that both sides conceded that the Honorable Judge Naifeh has the authority to direct delivery of such records to the Court for him to review for all exculpatory evidence favorable to Roger Dale Stafford. The Attorney General offered objections to the files being turned to the Public Defender for complete review, and no authority has been cited authorizing any person other than the Court and certain law officials to review them.

NOW THEREFORE, this Court finds that the Public Defender is entitled to any exculpatory evidence contained in the O.S.B.I. files; however, this Court further finds that such files should not be turned to the Public Defender. Instead, this Court finds the files should be subjected to review by the Court to determine whether or not exculpatory evidence is contained therein.

IT IS THEREFORE THE ORDER OF THIS COURT, that the Honorable Raymond Naifeh shall conduct a proper review of the O.S.B.I. files to make a determination whether or not exculpatory evidence is contained in said files.

IT IS THE FURTHER ORDER OF THIS COURT, that the Honorable Raymond Naifeh shall be authorized to designate and request assignment any other Judge, or Judges, to assist him, in the review of said records for their recommendation as to what might be exculpatory, in order to expedite such review. If any evidence is found to be exculpatory evidence, that information or evidence shall be turned to the Public Defender for consideration, in pursuit of the Post-Conviction Application.

The Order heretofore entered by the Honorable Raymond Naifeh directing delivery of the O.S.B.I. files to be delivered to the said Court is affirmed, but is vacated insofar as it purports to authorize any person other than the Honorable Respondent and the Judges appointed under the authority of this Order to review said records.

The Order of this Court staying proceedings is hereby vacated.

WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 25th day of April, 1986.

/s/ Tom Brett
TOM BRETT, JUDGE
/s/ Hez J. Bussey
HEZ J. BUSSEY, JUDGE