Roger Dale STAFFORD, Petitioner,

v.

Gary MAYNARD and the Attorney
General of Oklahoma,
Respondents.

No. Civ–87–678–T.

United States District Court,
W.D. Oklahoma.

March 31, 1994.

Robert A. Ravitz, Office of the Public Defender, Oklahoma City, OK, for Roger D. Stafford.

Sandra D. Howard, Office of the Atty. Gen., Oklahoma City, OK, for Gary D. Maynard and Attorney General of the State of Oklahoma.

### ORDER AND JUDGMENT

RALPH G. THOMPSON, District Judge.

Before the court are the objections of the petitioner and the respondents to the Report and Recommendation of the United States Magistrate Judge (the "magistrate"). Petitioner, a state prisoner appearing *in forma pauperis* and with counsel, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction and sentence of death entered by the District Court of Oklahoma County in Case No. CFR–79–926. The court has conducted a *de novo* review of the record to consider the

parties' objections, and finds that a further evidentiary hearing is not required.[1] The procedural history and facts of the case were accurately outlined in the magistrate's report, and the summary contained herein is in large part a duplication of same.

### PROCEDURAL HISTORY

On October 17, 1979, a jury convicted petitioner of six counts of first degree murder and imposed the death sentence on all counts. On direct appeal, where petitioner was represented by new counsel, the conviction and sentences were affirmed by the Oklahoma Court of Criminal Appeals. However, the Supreme Court vacated and remanded that decision for reconsideration because of the then recent decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which established a standard for ineffective assistance of counsel claims. *See Stafford v. State*, 665 P.2d 1205 (Okla.Crim.App.1983), vacated 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984). On remand, the conviction and sentence were again affirmed. *Stafford v. State*, 700 P.2d 223 (Okla.Crim.App.1985) *cert. denied*, 474 U.S. 865, 106 S.Ct. 188, 88 L.Ed.2d 157 (1985).

Petitioner subsequently filed an application for post-conviction relief in which he argued, *inter alia*, that material exculpatory evidence had been withheld. The Oklahoma Court of Criminal Appeals issued a writ of prohibition precluding the district court from turning over to the public defender the Oklahoma State Bureau of Investigation ("OSBI") files which allegedly contained such evidence. *Stafford v. State*, 731 P.2d 1372, 1383, App. 2 (Okla.Crim.App.1987). Instead, the appellate court directed the district court to review the OSBI files and provide any material exculpatory evidence to the public defender. *Id.* Following that review, the district court conducted an evidentiary hearing and entered extensive findings of fact and conclusions of law in which it denied post-conviction relief. That decision was affirmed on appeal. *Stafford v. State*, 731 P.2d 1372 (Okla.Crim.App. 1987).

---

1. An evidentiary hearing was conducted by the court on March 1, 1988.

Petitioner then filed this habeas action. In March 1988 the court conducted an evidentiary hearing. A primary focus of that hearing was the petitioner's contention that material exculpatory evidence had been withheld because counsel had not received a 166 page statement consisting of a transcription of an interview with Verna Stafford, the prosecution's primary witness. Among the witnesses called by petitioner at the March 1988 hearing were Greg Shields, the OSBI agent whose interview with Verna Stafford was reflected in the statement. Other witnesses included lead defense counsel and individuals who assisted counsel in representing petitioner at trial. The state did not call witnesses but relied on the evidence introduced in a 1985 hearing in a separate federal habeas action before the Honorable Lee R. West. In that action, petitioner challenged his conviction on three counts of first degree murder and sentence of death in Case No. CRF–79–83, District Court of McClain County, Oklahoma[2]. The transcript of that hearing and other material were received as evidence during the March 1988 hearing before this court.

Prior to entry of a ruling on these issues, this action was stayed to permit petitioner to exhaust state remedies concerning his claim that the death sentence should be reversed because the jury had been given an instruction which was subsequently held unconstitutional. Specifically, the jury had considered statutory "aggravating circumstances" in deciding the penalty phase of this trial. Among these was the "especially heinous, atrocious or cruel" aggravating circumstances. In *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1983), the Supreme Court held this phrase to be unconstitutionally vague. That decision affected petitioner's sentence and had not been raised in his appeal because *Maynard* had not yet been decided. Rather than dismiss the case as a "mixed petition" at that stage, the court elected to stay this proceeding to permit petitioner to exhaust his remedies with regard to that claim. Petitioner then filed a second application for post-conviction relief in which he raised only the issue concerning the aggravating circumstance. That application was denied, and its denial was affirmed by the court of criminal appeals. *Stafford v. State*, 815 P.2d 685 (Okla.Crim.App.1991). Accordingly, petitioner has now exhausted all state remedies on the grounds asserted in support of his claim for habeas relief. Those grounds are (1) the prosecution failed to provide defense counsel with material exculpatory evidence in its possession; (2) the court improperly permitted the use of post-hypnotic testimony; (3) trial counsel provided ineffective assistance; (4) trial counsel had a conflict of interest in the representation of petitioner; and (5) the death penalty resulted from the unconstitutionally vague instruction regarding "especially heinous, atrocious and cruel" aggravating circumstances.

## FACTS

The court of criminal appeals opinion in petitioner's direct appeal of his conviction and sentences contains a summary of the pertinent facts, as follows:

On July 16, 1978, Roger Stafford, his wife, Verna Stafford, and his brother, Harold Stafford, drove from Tulsa to Oklahoma City to rob the Sirloin Stockade restaurant. The trio waited in the restaurant parking lot until all the customers had left. At around 10:00 p.m. they exited their automobile and Roger Stafford knocked on the side door of the restaurant. The manager answered the door and was greeted by Roger and Harold Stafford pointing guns at him. They forced him to take them to the cash register and the office safe.

Inside the restaurant, the manager began taunting them, saying that he could not understand why people rob others instead of working for themselves. Roger Stafford hit the manager and demanded that he call his employees to the cash register. The manager complied with the demand. Harold and Verna Stafford held the employees at gun point while the appellant and the manager emptied the office safe which contained about $1,290.00. After they obtained the money, the employees

2. The McClain County conviction involved the murders of the Lorenz family.

were ordered inside the restaurant's walk-in freezer. The appellant then asked Harold Stafford to help him in the freezer. Harold reminded the appellant that no one was to be hurt. The appellant retorted that "they are going to get what they deserve." He then shot the only black employee, and both men opened fire on the remaining employees. Verna Stafford testified that she heard a lot of gun fire and screaming.

Roger Stafford then told Verna that it was time for her to take part. He placed his gun in Verna's hand and helped her pull the trigger. All six Sirloin Stockade employees died as a result of the shootings. *Stafford*, 665 P.2d at 1209–10.

The foregoing was derived primarily from the testimony of the state's principal witness, Verna Stafford. The state called numerous other witnesses. Pam Lynch testified that, on the night of July 16, 1978, she was driving on the highway near the Sirloin Stockade when she was involved in a near collision with an old green station wagon. She observed the driver of the station wagon, and identified him in court as being the petitioner. On cross-examination, Ms. Lynch testified that the driver's hair was parted and he kept moving it out of his eyes. (Trial transcript 736, hereinafter T.Tr.). She also testified that she had identified the petitioner from six photographs shown to her, although he had a moustache in the photograph and was not wearing glasses. (T.Tr. 739). However, she testified that she was able to identify the petitioner from the photographs because, in his photograph, he had "the same facial expression I saw on the highway." (T.Tr. 739).

Rose Collins, a resident of the Holiday Motel in Tulsa, testified that she saw Roger and Verna Stafford in an old green Oldsmobile station wagon on July 16, 1978 and had not previously driven that car. (T.Tr. 787). She testified that she saw them leave the Holiday Motel on July 16 at about 4:00 p.m. and that she saw them return on the morning of July 17, 1978 at about 2:00 a.m. or 3:00 a.m. in the morning. (T.Tr. 787).

Other residents of the Holiday Motel, Linda McFarland Lewis and Terecia Bennett,

testified that they had seen the old green station wagon in the Holiday Motel parking lot. (T.Tr. 745, 760). Terecia Bennett also testified that she saw the Staffords, accompanied by Harold Stafford, leave the Holiday Motel on July 16 in the green station wagon. (T.Tr. 760–61).

Carlos Joy, the boyfriend of Sirloin Stockade employee Terri Horst, who was one of the victims, testified that he was outside the Sirloin Stockade on July 16, 1978 waiting for Terri Horst to finish work. At that time, he observed a dirty green Oldsmobile Vista Cruiser station wagon with wood grain paneling and a luggage rack. The station wagon motor was running, and he noticed that the muffler was unusually loud. He also testified that he saw a box or suitcase in the back of the car. (T.Tr. 50–52).

Employees of the Holiday Motel in Tulsa testified as to conversations with petitioner or Verna Stafford as well as events occurring on July 16 and shortly thereafter. Linda McFarland Lewis testified that she overheard an argument between petitioner and Verna Stafford in the parking lot of the Holiday Motel after midnight on July 16, 1978. According to Ms. Lewis:

> "I saw Roger slap Verna and she said, 'I am calling the police.' and Roger said, 'go ahead. You would be in as much trouble as I would.' and she said, 'I didn't kill them Roger. You did.' Roger said, 'You were there, and you were with us.'" (T.Tr. 751).

Terecia Bennett testified that petitioner asked Terecia and her sister, Rose Collins, to burn some boxes and that they took them to the motel's dumpster to do so. Ms. Bennett testified that, in the dumpster, they found a pair of blue jeans that appeared to have blood on them. (T.Tr. 763). Terecia Bennett testified that she asked petitioner "if he had heard about the Sirloin Stockade killings. And he said, "yes." (T.Tr. 772). She then testified: "And, jokingly, I said, you're probably the one who killed them." And he said, "Yes, I did" And he was very serious." (T.Tr. 772–73).

Rose Collins testified that she overheard an argument at the Holiday Motel on the

morning of July 17, 1978. She said she entered Room 119 of the motel, where she saw Verna Stafford, the petitioner and Harold Stafford. (T.Tr. 789). She also saw a large amount of money on the bed. When Ms. Collins asked where they got the money, Verna Stafford stated that they had borrowed it from a friend in Oklahoma City. However, petitioner stated, "No, we robbed a bank." (T.Tr. 790). Rose Collins testified that there were boxes in the room and that petitioner asked Rose Collins and her sister Terecia Bennett to take the boxes to the dumpster and burn them. (T.Tr. 792). Ms. Collins also testified that they saw a pair of bloody Levis at the dumpster. (T.Tr. 795). She further testified that, later that morning, she said to Roger, "You didn't really kill them, did you, Roger?" He said, "Yes, I did." (T.Tr. 797). Rose Collins also testified that petitioner added, "It was just like shooting a balloon in a bag of water." (T.Tr. 798). She also testified that petitioner told her that shooting a person is "just like shooting a fence post." (T.Tr. 799).

Rose Collins also testified that petitioner threatened that, if she reported them to the police, she would not live long enough to testify. She was frightened and did not come forward until she was contacted by Detective McCaleb, who asked her if she knew petitioner. (T.Tr. 799–800). Terecia Bennett also testified that she did not go to the police because she was afraid. (T.Tr. 773).

Among the witnesses for the defense was the petitioner. He testified that, at the time of the crime, he was drunk on the hood of a Chevy in front of a house on Troost Street in Tulsa. (T.Tr. 885). He denied having an argument with Verna Stafford in the parking lot at the Holiday Motel and testified that he was at work until 1:00 a.m. on the morning of July 17, 1978. He denied that he was present at the time Rose Collins testified about burning boxes. He testified that, in January 1979, he was watching television and saw three composite drawings of suspects in the Sirloin Stockade investigation. (T.Tr. 944–946). He further testified that he called the police to identify two of the individuals in the composites as Harold and Verna Stafford.

(T.Tr. 946). On cross-examination, petitioner denied ever having seen the three guns used in the crime and denied having any guns while he was in Tulsa; he testified he did not normally carry a gun with him when he traveled. (T.Tr. 983). He denied telling anyone in Tulsa that he had guns or that he had shown anyone guns while he was there. (T.Tr. 984).

The prosecution then presented the testimony of Ronald Watkins, an Oklahoma County jail inmate who was incarcerated at the same time as petitioner. He testified the petitioner told him he was present at the Sirloin Stockade, that Verna and Harold Stafford had done the shooting and that he did not participate. (T.Tr. 1025). Ronald Watkins also testified that petitioner told him he had thrown the guns out of the car and that he had removed the serial numbers from the guns with some kind of grinding machine. (T.Tr. 1025–26). Two of petitioner's Tulsa coworkers testified that petitioner had shown them guns. (T.Tr. 1046, 1056).

The defense called another jail inmate to rebut the testimony of inmate Ronald Watkins. However, after informing counsel that he would give testimony favorable to petitioner, that inmate testified that petitioner had told him the Sirloin Stockade victims were all "suckers" and that he should have left Verna Stafford in the meat locker, too. (T.Tr. 1063).

The defense also called petitioner's supervisor at his place of employment to testify regarding petitioner's presence at work. He testified that, according to the time records, petitioner came to work at approximately 3:15 p.m. on July 17, 1978 and checked out from work at 1:04 a.m. the next morning. (T.Tr. 1007).

## DISCUSSION

### I. FAILURE TO PRODUCE MATERIAL EXCULPATORY EVIDENCE

As grounds for habeas relief, petitioner initially argues that his due process rights were violated because the prosecution failed to provide defense counsel with allegedly material exculpatory evidence. Petitioner contends that approximately twenty-five (25)

documents contained in the OSBI investigative files were improperly withheld by the prosecution and that this material contained exculpatory evidence. This claim was the subject of an extensive hearing in connection with petitioner's first application for post-conviction relief, and the district court entered findings and conclusions regarding this claim. *See Stafford v. State,* 731 P.2d 1372, App. 1 (Okla.Crim.App.1987). After conducting his review of the OSBI files which contained the challenged evidence, the assigned judge, the Honorable Raymond Naifeh, concluded that the evidence was not withheld because the prosecution had engaged in "open file discovery" allowing the defense counsel access to the evidence. 731 P.2d 1372, 1379. Furthermore, the judge concluded that the evidence was not material. *Id.* at 1379–1381. The appellate court affirmed that decision. 731 P.2d 1372, 1373–74. In this habeas action, petitioner again claims a violation of his constitutional rights on this basis.

■■■ It is well established that due process requires a prosecutor to disclose to the accused all material, exculpatory evidence in the possession of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Such evidence must, however, be both material and exculpatory. To satisfy the requirement of materiality, the evidence must meet the following test:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). The mere possibility that undisclosed evidence would have helped the defense or changed the outcome is not a sufficient showing of materiality. *Id.* at 674–78, 105 S.Ct. at 3379–81; *United States v. Agurs,* 427 U.S.

97, 109–110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). Although impeachment evidence is covered, there is no *Brady* violation where the withheld evidence is merely cumulative impeachment evidence. *See United States v. Abello–Silva,* 948 F.2d 1168 (10th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 107, 121 L.Ed.2d 65 (1992). Whether *Brady* is violated presents a mixed question of law and fact; the court's decision regarding materiality is reviewed *de novo. Id.* at 1179; *see also United States v. Buchanan,* 891 F.2d 1436, 1440 (10th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).

In this case, the magistrate judge extensively reviewed the record and concluded that evidence was not withheld because the prosecution engaged in "open file discovery". Report and Recommendation at 13. She further concluded that, in any event, the evidence in question was not material as defined by *Brady.* Although petitioner challenges the magistrate's conclusions, he agrees that she applied the proper standard of law in determining materiality.[3] He argues that evidence was withheld and that such evidence was material as defined by *Brady.*

The magistrate's conclusion that the evidence was not withheld was based on the record in petitioner's post-conviction proceeding. As indicated, Judge Naifeh conducted lengthy hearings and made detailed findings of fact regarding the defense counsel's access to investigative files. Judge Naifeh reviewed *in camera* the entire OSBI files and notes, records and police reports from the district attorney's files. Following his review of the OSBI files, which included reports on 387 suspects, he prepared a summary of the contents. That summary was sealed and retained as court Exhibit 1 with the OSBI records. *See* Transcript of August 13, 1986 hearing before Judge Naifeh, pages 12–16. Judge Naifeh also conducted hearings at which he heard testimony from defense counsel as well as the district attorney.

Judge Naifeh then entered detailed findings of fact regarding defense counsel's ac-

---

**3.** Petitioner initially argued that the "reasonable probability" standard of *Bagley* was inapplicable because he was convicted prior to the *Bagley* decision. In his objections to the Report and Recommendation, however, he expressly agrees that the correct standard of law was applied and argues only that materiality is satisfied under these circumstances.

cess to the investigative files. These findings are included as an appendix to the appellate court decision. *See* 731 P.2d 1372, App. 1, 1379–1381. He concluded *inter alia*, that the district attorney directed his assistants to provide "open file" discovery and turn over to defense counsel all exculpatory evidence. He further found that the defense attorneys reviewed the evidence in the district attorney's evidence room for many hours. Judge Naifeh noted that, because of the volume of files, records and reports, it was unlikely that counsel would remember seeing each document. With regard to the March 8, 1979 interview with Verna Stafford which petitioner claims was not disclosed, the judge found that attached to the tape of that interview was a handwritten note stating that the tape was given to defense counsel on September 27, 1979. Judge Naifeh concluded that the prosecution did not withhold evidence. 731 P.2d 1372, App. 1 at 1381. He also concluded that, in any event, the evidence in question was not material and exculpatory as required by *Brady*. *Id.*

The court of criminal appeals affirmed Judge Naifeh's denial of post-conviction relief. 731 P.2d at 1373. The appellate court concluded that the record revealed all evidence pertaining to this case was accessible to the defense counsel and the materials, whether exculpatory or not, were available to petitioner and his attorneys prior to trial. *Id.*

■ Addressing the same issue in this action, the magistrate also concluded that the record established the defense team had access to the complete file in the district attorney's office, including any OSBI files contained therein,[4] and that the state court's finding on that issue was entitled to a presumption of correctness. *See e.g., Sumner v. Mata*, 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981). The magistrate correctly concluded that the extensive record establishes that such evidence was not withheld. Accordingly, the court adopts this conclusion. Furthermore, the court agrees with

the magistrate's conclusion that, even if evidence was withheld by the prosecutors, the *Brady* rule was not violated because petitioner failed to show that it was material. In reaching that conclusion, the magistrate reviewed each of the approximately twenty-six (26) documents which petitioner identified as allegedly containing material exculpatory evidence. The magistrate concluded that most of these documents were not material because, at best, they contained cumulative impeachment evidence which did not violate *Brady*.

In objecting to the Report and Recommendation, petitioner contends that the magistrate's conclusion regarding materiality is incorrect. His primary argument is that certain allegedly withheld pretrial statements omit items about which the witnesses testified at trial. This argument does not, however, alter the magistrate's conclusion that the evidence in question is cumulative impeachment material and does not differ substantially from evidence which was used at trial in cross-examining these witnesses.

The exhibits on which petitioner initially relied for his *Brady* claim consist of twenty-six (26) items which were exhibits which were introduced in the hearing on petitioner's application for post-conviction relief. The magistrate discussed each exhibit and found that none met the definition of materiality required by *Brady*. In his objection to the Report and Recommendation, petitioner does not challenge that finding with respect to Exhibit numbers 2, 4, 9, 12, 15, 16, 18, 19, 22, 25, or 26. Therefore, the discussion herein is confined to those documents about which petitioner objects.

■ Exhibit 1 is a March 8, 1979 interview with Verna Stafford. As the magistrate noted, this statement contains internal inconsistencies and is also inconsistent with her trial testimony in several respects. However, Verna Stafford's trial testimony was also inconsistent with other disclosed pretrial statements she made on March 15 and March 24, 1979 as well as her preliminary hearing testi-

---

4. The record reflects that certain OSBI files, including those which reflected investigative reports on the *Lorenz* case, had been filed under seal with Judge Naifeh and that same were not available to defense counsel in their entirety. However, as the magistrate noted, petitioner does not base his claim for habeas relief on the failure to produce these sealed files.

mony. The magistrate noted that her inconsistent testimony was the subject of extensive questioning on both direct and cross-examination at trial. The magistrate concluded that any inconsistencies in the March 8 statement would represent only cumulative impeachment material.

Petitioner argues that, to the extent Verna Stafford testified at trial about matters not mentioned in the March 8 statement, the defense could have utilized that statement for impeachment. These omissions, detailed in his objections, generally relate to her statements regarding where the Staffords lived in July 1978, what type of car she purchased, and when she saw Harold Stafford. Petitioner also highlights the fact that she repeatedly stated that she did not recall having been in Oklahoma City at the time of the crime, did not remember leaving Tulsa or being at the Will Rogers Airport. She also denied having shot anyone, and had could only vaguely describe the premises of the Sirloin Stockade restaurant. She claimed not to know what had happened to the money, denied that there were other guns, and described the car driven by the Staffords as cream colored rather than green. At trial, however, she testified in some detail about the trip from Tulsa to Oklahoma City and gave details regarding the events on the date of the crime. She also corroborated the testimony of witness Pam Lynch regarding a near collision on the highway near the Sirloin Stockade and testified regarding distribution of the money when the Staffords returned to Tulsa. T.Tr. 604–606; 610, 611; 618–622; 648, 650, 656; 665–677. Petitioner contends that the magistrate failed to expressly note several specific omissions in the March 8 statement concerning matters about which Verna Stafford testified at trial. That argument does not, however, alter the conclusion that these inconsistencies are cumulative impeachment material. As noted by the magistrate, Verna Stafford admitted at trial upon both direct and cross-examination that she had changed her testimony. T.Tr. 589–592; 594–707. The ultimate effect was that Verna Stafford had not been wholly truthful and that she could benefit from testifying against petitioner. These points were established on both direct and cross-examination. Ques-

tioning regarding any additional inconsistencies would have been cumulative. Accordingly, the March 8, 1979 statement is not material as required by *Brady*.

■ Exhibit 3 is a police report regarding information obtained from Pam Lynch on July 22, 1978. Pam Lynch testified at trial regarding a near collision with a green station wagon on the highway near the Sirloin Stockade on the night of the crime. In March 1979, Ms. Lynch identified petitioner from a photo lineup, stating that he had the same facial expression as the driver of the car involved in the near collision. In Exhibit 3, she described the driver of the station wagon as a 40 to 45 year old male, with a round face, black glasses and dark hair which was graying at the temples. Petitioner contends that, because this description does not accurately portray petitioner's physical characteristics, the statement in which it appears is material exculpatory evidence which could have been used at trial to impeach Pam Lynch. However, Pam Lynch gave a similar physical description of the driver when she was hypnotized on July 30, 1979, and her resulting statement was disclosed to the defense. Petitioner's argument that Exhibit 3 would have "totally discredited" Pam Lynch's testimony is not supported by the record as a whole. Accordingly, this exhibit is not material and a failure to disclose it did not violate petitioner's rights.

■ Petitioner's objections with respect to the finding of no materiality regarding Exhibit 5 again focus on inconsistencies in statements made by Verna Stafford. Exhibit 5 is a report concerning efforts to retrace the Staffords' travel route at the time of the Sirloin Stockade murders and the Lorenz murders. Although the report focuses primarily on the Lorenz case, it notes that Verna Stafford described the station wagon driven by the Staffords as a dark cream color with green side panels. She also stated that petitioner had a wrist watch which she believed was taken from one of the Sirloin Stockade victims. The magistrate correctly concluded that this material represented cumulative impeachment material and that the inconsistencies in Verna Stafford's state-

ments contained in Exhibit 5 and her testimony at trial were not substantially different from other inconsistencies about which she was extensively examined at trial.

Exhibit 6 is a handwritten note reflecting that Verna Stafford told an unidentified person that she did not know what had happened to the money obtained in the Sirloin Stockade robbery. As the magistrate noted, this statement was similar to one contained in a disclosed March 15, 1979 statement of Verna Stafford and, at best, represented cumulative impeachment material.

Petitioner contends that Exhibit 7, an Illinois law enforcement report of a March 9, 1979 interview with Mary Stafford, contains material exculpatory evidence. Mary Stafford, who was Harold Stafford's wife, did not testify at trial. The statement in question reflects that she told law enforcement personnel she did not see her husband in Tulsa until the night before they left for Louisiana, some time after the Sirloin Stockade murders. This statement is consistent with petitioner's statement that he did not see Harold Stafford until that time. However, it contains no other information regarding the Sirloin Stockade murders. The petitioner does not establish that this statement would have affected the outcome of the trial and, as noted by the magistrate, there is nothing to show that this information could not have been independently obtained by the defense.

Petitioner also failed to establish materiality with regard to Exhibit 8. That exhibit is a handwritten note reflecting the statement of Linda McFarland Lewis that she saw Sirloin Stockade silverware wrappers on the dashboard of an old pickup truck and that petitioner, Verna Stafford and Danny Kerr were standing near the truck. Linda McFarland Lewis testified at trial that she saw Sirloin Stockade boxes in petitioner's possession and did not mention this incident. Even if Linda McFarland Lewis had been questioned about having seen silverware wrappers, that would not be inconsistent with her testimony regarding boxes. Petitioner has failed to establish any materiality with regard to this statement.

Petitioner contends that Exhibits 10 and 11 would have enabled defense counsel to impeach Verna Stafford and the Holiday Motel maids regarding their testimony that Harold Stafford had lived at the Holiday Motel during the time period prior to the Sirloin Stockade murders. These exhibits reflect interviews with Mary Young, who stated that Harold Stafford, his girlfriend and a small child stayed with her family in Sand Springs in June 1978. As the magistrate noted, the petitioner fails to establish that this is material evidence which would have altered the outcome of the trial.

Exhibits 13 through 19 consist of various notes and photographs as well as police and OSBI reports regarding a variety of matters in connection with the homicide investigation. As noted, petitioner does not object to the magistrate's finding of no materiality with regard to these exhibits except as to Exhibits 13, 14 and 17. Petitioner contends that the exhibit reflecting a physical examination of petitioner showing his height, weight and other physical characteristics was material. However, he does not present any argument as to how this would have affected the outcome of the trial. Similarly, petitioner fails to establish materiality with regard to Exhibit 13, a statement of the Holiday Motel manager who was unable to positively identify Harold Stafford. Petitioner offers nothing to show that this statement would have affected the outcome. Petitioner contends that Exhibit 14 establishes an inconsistency in Verna Stafford's testimony because it discusses her purchase of a car after the Sirloin Stockade homicides. It also contains evidence regarding the whereabouts of Danny Kerr. As respondent notes, however, the defense attorneys testified in post-conviction hearings that Danny Kerr was interviewed. Thus, the defense had access to this witness; there is no showing that Exhibit 14 would have affected the outcome of the trial. Exhibit 17 is a handwritten note of a 12 year old witness concerning the Sirloin Stockade boxes. Although petitioner contends that this establishes an inconsistency in her trial testimony that she saw petitioner in possession of Sirloin Stockade boxes, her handwritten note to the effect that he told her to put down a

Sirloin Stockade box does not necessarily constitute an inconsistency. These exhibits, as noted by the magistrate, were not material.

■ Exhibits 20A, B and C consist of statements from two witnesses who also observed the near collision about which Pam Lynch testified. Petitioner argues these are material because these witnesses gave a physical description of the driver of the green station wagon which differed substantially from that provided by Lynch and both failed to identify petitioner in the photo lineup. The magistrate correctly found that these witnesses' testimony would not have been material evidence regarding whether petitioner committed the crime.

■ Petitioner argues that Exhibit 23 is material because it is inconsistent with other testimony that the Staffords lived at the Holiday Motel in July 1978. This exhibit reflects a statement from the couple who managed the motel. They stated that the Staffords did not reside there and did not reside in the room number which other witnesses had identified. Petitioner contends this statement would have "destroyed" the credibility of the testimony of the employees at the Holiday Motel. Although the statement does contain inconsistencies regarding details of the Staffords' residence at the motel, it does not contradict the specific statements of the employees with regard to conversations they had with the Staffords. Petitioner does not establish that the outcome of the trial would have differed if these individuals had testified at trial.

Exhibit 24 is a report from an informant who observed a vehicle in the vicinity of the Sirloin Stockade at the time of the murders. The physical description of its driver, as noted by petitioner, differs from · petitioner's physical characteristics in several respects. However, as the magistrate noted, petitioner does not show that the outcome would have differed if ·this informant had testified at trial.

The court concludes that the magistrate correctly found the petitioner failed to establish that, assuming the foregoing documents were withheld, there is a reasonable proba-

bility that the outcome of the trial would have differed had this information been available to defense counsel. Accordingly, petitioner has not established grounds for habeas relief based on his contention that material exculpatory evidence was withheld.

## II. IMPROPER INTRODUCTION OF POST–HYPNOTIC TESTIMONY

Prior to their trial testimony, both Verna Stafford and Pam Lynch were hypnotized. Petitioner contends that admission of their post-hypnotic testimony deprived him of his right to confrontation. This allegation was also asserted in petitioner's first application for post-conviction relief, and was rejected by the district court. The district court entered findings of fact and conclusions of law following its evidentiary hearing on this issue, and these are included in the appellate court's decision. 731 P.2d 1372, App. 1 at 1377–1379.

Verna Stafford was hypnotized in the spring of 1979, although there is no record of the session. The district court found that the hypnosis was primarily intended to assist her in recalling the date of the Lorenz murders rather than information regarding the Sirloin Stockade events. 731 P.2d 1372, App. 1 at 1377. After hypnosis was induced, the session last less than five minutes and was stopped by detective McCaleb and OSBI Agent Linville. Verna Stafford testified she considered it an unsuccessful attempt at hypnosis. Prior to the hypnosis, Verna Stafford had given police a statement in which she stated that petitioner was involved in the Sirloin Stockade murders. She had also drawn a diagram of the Sirloin Stockade and had discussed the guns used. *Stafford*, 731 P.2d 1372, App. 1 at 1378.

After giving a statement to the police regarding the near collision on the night of the Sirloin Stockade murders, Pam Lynch was also hypnotized. Her hypnosis occurred approximately 14 days after the murders, prior to the time when plaintiff was a suspect. Her descriptions of the driver of the other car were substantially similar both before and after hypnosis.

Hypnotically refreshed testimony is not a *per se* deprivation of constitutional rights. *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S.Ct. 2704, 2714, 97 L.Ed.2d 37 (1987); *Robison v. Maynard,* 829 F.2d 1501, 1508 (10th Cir.1987). However, such testimony must be evaluated because it generally creates three concerns noted by the courts:

> [T]he subject becomes "suggestible" and may try to please the hypnotist with answer the subject thinks will be met with approval; the subject is likely to "confabulate," that is, to fill in details from the imagination in order to make an answer more coherent and complete; and the subject experiences "memory hardening" which gives him great confidence in both true and false memories. *Rock,* 483 U.S. at 59–60, 107 S.Ct. at 2713.

To establish that hypnotically refreshed testimony was erroneously admitted, petitioner must prove by a preponderance of the evidence that differences between pre and posthypnotic statements were the product of the hypnosis. *Beachum v. Tansy,* 903 F.2d 1321, 1326 (10th Cir.1990) *cert. denied* 498 U.S. 904, 111 S.Ct. 269, 112 L.Ed.2d 225 (1990).

The magistrate correctly concluded that petitioner has not satisfied that burden in this case. With respect to Verna Stafford, there is no indication from the petitioner that the hypnotic session lasting less than five minutes produced trial testimony inconsistent with her prior statements. Even if the hypnosis was designed to refresh her memory regarding the Sirloin Stockade events rather than the Lorenz murders, the record reflects that the session was not productive in that respect. Dr. Hoyt Morris, who conducted the session, testified that she was not asked questions or given any suggestions relating to the Sirloin Stockade, that there was no post-hypnotic suggestion, and there would have been no memory enhancement as a result of the session. 731 P.2d 1372, App. 1 at 1377. Verna Stafford also testified that no one asked her questions about the Sirloin Stockade murders during the attempted hypnosis. *Id.* Petitioner offers no evidence to support his contention that her testimony was improperly enhanced by hypnosis.

Petitioner's argument with respect to the testimony of Pam Lynch is similarly deficient. At the time she was hypnotized, petitioner was not yet a suspect in the Sirloin Stockade murders. Petitioner offers no evidence that any post-hypnotic suggestion was made regarding petitioner or that such could have been made. Lynch's description of the vehicle and its driver were essentially the same both before and after hypnosis. Petitioner offers nothing to show that the trial testimony of Pam Lynch or her identification of petitioner in a photographic lineup were in any way the product of hypnosis. Accordingly, petitioner has not met his burden of proof with regard to his contention and habeas relief is not warranted on this basis.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

As his third grounds for habeas relief, petitioner asserts that he was denied his constitutional right to effective assistance of counsel at trial. In his objections to the magistrate's Report and Recommendation, petitioner agrees that the magistrate applied the correct legal standard with regard to this claim, but disputes the conclusion that he was not deprived of effective assistance of counsel.

Petitioner listed seventeen specific omissions by counsel in support of this claim, as outlined in the Report and Recommendation. Most of these allegations assert that counsel was ineffective because he failed to cross-examine certain witnesses regarding specific matters or failed to call witnesses to testify at trial. All but three of the specific allegations relate to impeachment material allegedly improperly withheld in violation of the *Brady* rule. In addition, petitioner contends that counsel failed to introduce evidence of a door knob fingerprint which did not match that of Verna Stafford, petitioner or Harold Stafford. He also allegedly failed to investigate a former Sirloin Stockade employee who purportedly owned a Vista Cruiser or an unidentified person who had stated she was present at the scene of these homicides.

As noted in the Report and Recommendation, ineffective assistance of counsel claims require that the petitioner establish

two elements: constitutionally deficient performance by counsel and a reasonable probability that, but for that performance, the outcome would have differed. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In *Strickland,* the court established the "two pronged" test required for such claims:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. 466 U.S. at 687, 104 S.Ct. at 2064.

 There is a strong presumption that counsel provided effective assistance; petitioner has the burden of proof to overcome that presumption. *United States v. Voigt,* 877 F.2d 1465, 1466 (10th Cir.1989) *cert. denied,* 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989), citing *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). Where, as here, the claim is based on a failure to investigate, petitioner must include a comprehensive showing as to what the investigation would have produced. *Cross v. DeRobertis,* 811 F.2d 1008, 1016 (7th Cir.1987).

 Viewing the record and the specific claims of petitioner, he cannot establish the requisite element of prejudice because he cannot show a reasonable probability that, but for the purported errors of counsel, the outcome of the trial would have differed. Assuming, arguendo, that counsel should have called the omitted witnesses or cross-examined others regarding the specific matters listed by petitioner, there is nothing presented by petitioner to indicate that the resulting testimony, either individually or collectively, would have altered the outcome.

As a result, petitioner is not entitled to habeas relief based on his claim of ineffective assistance of counsel.

## IV. CONFLICT OF INTEREST

Related to his ineffective assistance of counsel claim is petitioner's contention that he was denied effective representation because his trial counsel had a conflict of interest with regard to publication rights to the story of the Sirloin Stockade murders. Petitioner does not dispute the correctness of the legal or factual material in the Report and Recommendation but disputes only the magistrate's finding that this claim does not warrant habeas relief.

 Prejudice to the defendant is presumed where he shows that his attorney actually represented conflicting interests. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. However, to establish such conflict, the petitioner must demonstrate as a threshold matter that the defense attorney was "required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Litchfield,* 959 F.2d 1514, 1518 (10th Cir.1992). The possibility of a conflict is insufficient; the petitioner must show that an actual conflict adversely affected counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

 In this case, the parties do not dispute that petitioner's trial counsel had engaged in negotiations regarding book publication. In a post trial hearing regarding petitioner's habeas claim concerning his conviction in the Lorenz murders, the Honorable Lee West heard testimony regarding this matter. During that hearing, petitioner's trial counsel denied that there was a contract for book publication at the time of the trial. His testimony was corroborated by Sharon Carter, who also testified that petitioner was more interested in a book than was his counsel. West Transcript at 249. There was also testimony that defense counsel had discussed prior to trial whether to object to the admission of photographs of the Sirloin Stockade murder scene because there was a possibility that, if excluded, these photographs would

not be available for book publication. During the hearing before Judge West, counsel denied having this conversation. During the trial, defense counsel did object to the admission of these photographs, but they were ultimately admitted over that objection. West Transcript at 66–69.

The court agrees with the magistrate's conclusion that petitioner presented no evidence sufficient to show that defense counsel's interest in publication rights required him to make a choice advancing his own interest to the detriment of petitioner's interests. Accordingly, habeas relief is not warranted.

## V. IMPROPER CONSIDERATION OF THE "ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL" AGGRAVATING CIRCUMSTANCE.

■ As his final basis for habeas relief, petitioner contends that the death penalty was improperly imposed in this case because the jury instruction regarding the "especially heinous, atrocious, and cruel" aggravating circumstance was unconstitutionally vague. Subsequent to his conviction and sentence, the United States Supreme Court decided *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), in which it held unconstitutional Oklahoma's application of the "heinous, atrocious or cruel" aggravating circumstance because it was overly vague. 486 U.S. at 360, 108 S.Ct. at 1857. Because that decision was rendered after this habeas action was filed, the court stayed this action to permit petitioner to return to the state courts to exhaust his remedies regarding this claim. The Oklahoma Court of Criminal Appeals affirmed the district court's denial of petitioner's application for post-conviction relief on this issue. *Stafford v. State*, 815 P.2d 685 (Okla.Crim.App.1991). The court of criminal appeals held that the jury instruction in petitioner's case regarding the "especially heinous, atrocious and cruel" aggravating circumstance was unconstitutionally vague and that, accordingly, the aggravating circumstance failed. 815 P.2d at 687. However, the court also found that, under *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), it is con-

stitutionally permissible in such cases for an appellate court to conduct a harmless error analysis or to reweigh the remaining aggravating circumstances against any mitigating evidence and determine whether the death penalty would have been imposed. 815 P.2d at 688. In this case, the jury had considered three other aggravating factors. 815 P.2d at 686, n. 1. The appellate court reweighed these factors against the mitigating evidence to determine if the death penalty was warranted. *Id.*

Although the magistrate found that the court of criminal appeals "reweighed the evidence," she concluded that its reweighing analysis was deficient because it did not sufficiently detail the remaining aggravating factors analyzed. Report and Recommendation at 37–38. The magistrate noted that, subsequent to the court of criminal appeals decision on this issue, the United States Supreme Court rendered additional opinions regarding the "reweighing" process. *See Richmond v. Lewis*, 506 U.S. ——, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), *Sochor v. Florida*, 504 U.S. ——, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), and *Stringer v. Black*, 503 U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). The magistrate also found that the Oklahoma Court of Criminal Appeals subsequently cited these decisions in it "reweighing" analysis. *Trice v. State*, 853 P.2d 203, (Okla.Crim.App. 1993). As noted in *Trice*, these decisions follow the *Clemons* holding that, when an aggravating circumstance is held invalid, the appellate court has the authority to review any remaining aggravating circumstances along with the mitigating evidence to determine the validity of the death sentence. 853 P.2d at 221. The Eighth Amendment requires either reweighing or conducting a harmless error analysis. *Id.*, citing *Richmond*, 506 U.S. ——, ——, 113 S.Ct. 528, 535; *Clemons*, 494 U.S. at 739–40, 110 S.Ct. at 1443–44. The reweighing process requires "a thorough analysis of the role an invalid aggravating factor played in the sentencing process." *Stringer*, 503 U.S. at ——, 112 S.Ct. at 1136. To implement the "well established Eighth Amendment requirement of individualized sentencing determinations in death penalty cases," close appellate scrutiny of the import and effect of invalid aggra-

vating factors is required. *Id.; see also Richmond,* 506 U.S. at ——, 113 S.Ct. at 535.

In this case, the magistrate found that, although the court of criminal appeals expressly listed the mitigating factors it considered, it "failed to make more than a bare reference to the remaining aggravating factors and omitted the required thorough analysis of the role the invalid factor played in the sentencing process." Report and Recommendation at 38. The magistrate thus recommended that the matter be remanded to the court of criminal appeals for further proceedings.

Although the court of criminal appeals may not have utilized the precise language in *Trice* and the Supreme Court decisions cited therein, the opinion reflects that it nevertheless conducted the required thorough analysis of the role played by the invalid aggravating factor. The court recognized the importance of the reweighing analysis and, in fact, engaged in an analysis strikingly similar to the analysis it later applied in *Trice.*

The court in *Stafford* expressly found that it was required to engage in "reweighing the remaining aggravating circumstances against the mitigating circumstances" and "make an individualized determination from an actual reweighing." 815 P.2d at 689, citing *Clemons,* 494 U.S. at 750–752, 110 S.Ct. at 1449–50. The court initially noted that the jury had found the existence of four aggravating circumstances: (1) the defendant knowingly created the risk of death to more than one person; (2) the murder was especially heinous, atrocious or cruel; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (4) there existed a probability that the defendant would commit criminal acts of violence in the future that would constitute a continuing threat to society. 815 P.2d at 686, n. 1. Because the "especially heinous, atrocious or cruel" aggravator was invalid, the court found that it was required to make an "individualized determination" of the propriety of the sentence by actually reweighing the remaining valid factors against the mitigating evidence. The court again listed all remaining valid aggravating factors, as well as the mitigating factors considered by the jury. *Id.* at 689. The court concluded as follows:

> Upon careful consideration of the evidence supporting the remaining aggravating circumstances, and the evidence which may be considered to be mitigating, we find that the aggravating circumstances far outweigh the mitigating evidence. Thus, we conclude that even in the absence of the aggravating circumstance of "especially heinous, atrocious or cruel," the sentence of death is factually substantiated and appropriate; the jury's consideration of the unconstitutional aggravating circumstance was at most harmless error. 815 P.2d at 689.

In *Trice,* which was decided after *Stringer* and *Richmond,* the court applied essentially the same analysis. After listing the valid aggravating factors found by the jury, the appellate court summarized the mitigating evidence and concluded as follows:

> After careful review and consideration of the evidence supporting the three valid aggravating circumstances, as well as the first and second stage evidence which may be considered mitigating, we find the sentence of death factually substantiated and appropriate. While ample evidence was presented to support the three valid aggravating circumstances, the proffered mitigating factors were relatively weak. Perhaps most importantly, very little of the state's closing argument was devoted to describing evidence of the failed "heinous, atrocious, or cruel" aggravator. Clearly, the jury's proper consideration of this aggravator did not play a significant role in its decision to sentence appellant to death. The jury's consideration of the unconstitutional aggravator was at most harmless error. *See Stafford v. State,* 815 P.2d 685, 689 (Okla.Crim.App.1991).

853 P.2d 203 at 222.

Thus, in both cases, the court of criminal appeals found that, after weighing the permissible aggravating circumstances against the mitigating factors, the jury's consideration of the unconstitutional aggravator was, at most, harmless error. In reaching that conclusion, the *Stafford* court relied on *Clemons* as providing the guidance for the factors

to be considered in the reweighing analysis. *See* 815 P.2d at 688–89. The *Trice* decision reflects that the Supreme Court decisions in *Richmond, Sochor* and *Stringer* did not affect its reweighing analysis, and that it also relied on *Clemons* as the primary guidance for that analysis. 853 P.2d at 221–222. In fact, the court in *Trice* cited the *Stafford* decision in concluding that the invalid factor did not play a significant role in the jury's decision. *See* 853 P.2d at 222.

Further, the Supreme Court decisions in *Richmond, Sochor* and *Stringer* do not provide a precise formula for reweighing. As the court noted in *Richmond,* "Our prior cases do not specify the degree of clarity with which a state appellate court must reweigh." 506 U.S. at ——, 113 S.Ct. at 535. Finding that the appellate court had not even attempted a reweighing analysis in *Richmond,* the court nonetheless declined to develop a precise procedure for doing so. *Id.* Similarly, *Stringer* and *Sochor* did not address the adequacy of the reweighing or harmless error analysis, but found that no analysis had occurred at the appellate level. *Stringer,* 503 U.S. at —— 112 S.Ct. at 1140; *Sochor,* 504 U.S. at ——, 112 S.Ct. at 2122–23. Accordingly, the decisions were remanded.

In contrast, the court of appeals' decision in *Stafford* includes a reweighing of the remaining valid aggravating factors and the mitigating evidence. 815 P.2d at 688–89. Although the court did not utilize the *Stringer* language that it was required to determine "what the sentencer would have done absent the factor," the appellate court nevertheless made that determination.

The court concludes that it is not necessary to remand for further proceedings because the appellate court's reweighing analysis satisfies the constitutional requirements. The appellate court's reweighing of the evidence in connection with petitioner's sentence effectively determined the result that would have been reached by the jury had it not considered the invalid aggravating circumstance. Accordingly, the court finds no reason to require the appellate court to repeat this analysis.

As the foregoing indicates, the Report and Recommendation is adopted to the extent that it denies habeas relief on the basis of grounds 1 through 4. With respect to petitioner's final basis for relief, the court also finds that habeas relief should be denied on that basis. Accordingly, the petition for habeas corpus is denied, and the action is dismissed with prejudice. Judgment shall be entered accordingly. Further, the court denies the issuance of a certificate of probable cause and an appeal *in forma pauperis,* as there is no legal basis for the relief sought.

IT IS SO ORDERED.